FRED E. SALVIO v. SOPHIE K. SALVIO

PETERS, HEALEY, PARSKEY, ARMENTANO and WRIGHT, Js.

Argued December 9, 1981—decision released February 23, 1982

*Harry L. Nair,* for the appellant (defendant).

*C. Michael Budlong,* with whom was *Pasquale J. Cannata,* for the appellee (plaintiff).

PETERS, J. The principal issue in this case is whether savings accounts held by one or both parents in trust for their children may be included by the trial court in its division of marital property accompanying the parents' divorce. The trial court divided six savings accounts issued in the name of the defendant wife, Sophie K. Salvio, in trust for Gerald and Deborah Salvio, children of the parties, equally between the defendant and the plaintiff husband, Fred E. Salvio, co-trustee of one account. The defendant appeals that decision and certain other orders arising out of the marital dissolution.

Fred and Sophie Salvio were married in 1959 and had two children, Gerald, born in 1960, and Deborah, born in 1962. In 1978 the plaintiff, Fred Salvio, brought an action for divorce. The defendant counterclaimed, seeking dissolution of the marriage, custody of Deborah, at that time still a minor, and various financial benefits. At a protracted series of hearings the parties testified to the existence of twelve savings accounts, eight at the Berlin Savings Bank and four at the American Savings Bank of Newington. The latter accounts, two issued to the defendant as trustee for Gerald and two as trustee for Deborah, contained at the time of trial approximately $50,000. They were not included by the trial court in its decision and are not at issue in

this appeal. Of the eight accounts at the Berlin Savings Bank, two were conceded to be irrevocable trusts and hence unavailable to either party; those accounts contained approximately $200. The six remaining Berlin Savings Bank accounts, containing approximately $25,000, are the focus of this appeal. Three accounts were in trust for Gerald and three for Deborah; Sophie Salvio was named trustee in five, Sophie or Fred Salvio in one.

At trial both parties agreed that these accounts were established by the defendant as a fund for the children's college education.[1] Although the defendant retained possession of the bank books and the plaintiff made only one deposit, the plaintiff knew of the existence of these accounts and of their purpose. The defendant testified to withdrawing funds from the accounts on one occasion to purchase a car and later replacing the amount withdrawn.[2] All other withdrawals were for the purpose of opening new accounts in trust for the children. The sources of the funds deposited included the earnings of both parties, the defendant's inheritance, and gifts to the children.

In its memorandum of decision the trial court ordered that the funds in the six accounts at the Berlin Savings Bank be divided equally between the parties. The court further ordered that $3000 of the plaintiff's share be held in escrow until resolution of certain disputed claims under a previous court order. After awarding custody of the minor child

---

[1] At trial the plaintiff's attorney stipulated that the defendant opened all of the accounts at issue.

[2] The transcript does not indicate whether the funds for the car were withdrawn from the Berlin Savings Bank or the American Savings Bank. The defendant testified that she withdrew $5000 "[f]rom one of the children's" accounts.

to the defendant, ordering the plaintiff to pay $175 per week in alimony, denying child support, and dividing other assets of the marriage, the court denied counsel fees to both parties.

On appeal to this court, the defendant's principal claim of error is the inclusion by the trial court of the six Berlin Savings Bank accounts in its division of marital property. The defendant also claims error in the court's order placing $3000 of the plaintiff's share in escrow; in the court's failure to act on the defendant's motion for contempt against the plaintiff; in the amount of the court's award of alimony and its denial of child support; in the allocation of the parties' assets; and in the denial of counsel fees.

## I

The defendant claims that the disputed accounts at the Berlin Savings Bank were beyond the trial court's jurisdiction to allocate because they were irrevocable trusts owned by the beneficiaries, Gerald and Deborah. Since the beneficiaries, the true owners of the property, were not made parties to the dissolution action, she argues, the trial court could not order the disposition of a trust corpus based merely on the parties' status as trustees. The first issue before us, then, is the determination of the rights of trustees and beneficiaries in savings bank trust accounts. Such a determination is a prerequisite to adjudication of the Superior Court's jurisdiction to allocate such property in a marital dissolution action.

Because the issue before us is one of first impression in this state, it is important to put the savings account trust, now statutory, into its historical context. A savings account trust arises when a bank

depositor establishes an account in trust for a named beneficiary while reserving to himself, as trustee, the right to withdraw the funds in that account at any time. Upon the trustee's death, ownership of the funds remaining on deposit passes automatically to the beneficiary. Originally such trusts were viewed as enforceable only if they could be found to be irrevocable. *Minor* v. *Rogers,* 40 Conn. 512, 521 (1873); *McCaffrey* v. *North Adams Savings Bank,* 244 Mass. 396, 398, 138 N.E. 393 (1923). Revocable trusts were often held ineffective as testamentary dispositions violative of the Statute of Wills. *Day Trust Co.* v. *Malden Savings Bank,* 328 Mass. 576, 579, 105 N.E.2d 363 (1952); *Hogarth-Swann* v. *Steele,* 294 Mass. 396, 398, 2 N.E.2d 446 (1936). New York courts, however, early in this century validated such trusts, often called Totten trusts after the leading case, as tentative trusts capable of transmitting a legal interest in the funds on deposit at the depositor's death. *In re Totten,* 179 N.Y. 112, 125–26, 71 N.E. 748 (1904). This is the view endorsed by the Restatement (Second), Trusts § 58 (1959) and by I Scott, Trusts (3d Ed. 1967) § 58.

Each of these analyses of savings bank trust accounts proved in some sense unsatisfactory. As this court recognized in *Driscoll* v. *Norwich Savings Society,* 139 Conn. 346, 350, 93 A.2d 925 (1952), savings accounts that purport to transfer ownership of deposits are so hybrid in concept that they call out for a sui generis treatment by statute.

The earliest Connecticut statute to address this need provided procedures for the creation of savings account trusts and absolved banks from any liability for payment of funds on deposit at the

depositor's death to the named beneficiary. General Statutes § 5829 (1949 Rev.).[3] After this court declared such payments to be in violation of the Statute of Wills; *Fasano v. Meliso,* 146 Conn. 496, 500, 152 A.2d 512 (1959); the legislature responded with a more elaborate statute validating these death transfers.[4] The court's concern in *Fasano* that "there was no evidence whatsoever of any intention that title to [the accounts] or any interest in them should leave the decedent prior to his death" was remedied by the legislature's conclusive presumption of the depositor's intent that "if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and the moneys to the credit of the trust shall vest in the named beneficiary free and clear of the trust." Public Acts 1961, No. 306, § 1 (c).[5] This statutory presumption was

[3] General Statutes (1949 Rev.) provides as follows: "Sec. 5829. DEPOSITS IN TRUST. No savings bank or the savings department of a state bank and trust company shall accept any deposit made by one person in trust for another unless the same shall be accompanied by a statement signed by the depositor giving the name and residence of the beneficiary and setting forth to whom the principal and interest of such deposit belong. Unless provision shall be made to the contrary in such statement, such deposit may, upon the death of the trustee, be paid to the beneficiary, and any savings bank or savings department of a state bank and trust company shall be fully protected in making such payment. In the case of a trust created by deed, will or other instrument, a certified copy of the instrument establishing such trust shall be filed by the depositor if at any time requested by such bank."

[4] For a history of Totten trusts in this state prior to *Fasano* v. *Meliso,* 146 Conn. 496, 152 A.2d 512 (1959), see Clark, "Totten Trusts in Connecticut," 29 Conn. B.J. 1 (1955). For a discussion of the relation of *Fasano* to Public Acts 1961, No. 306, see "Some Statutory Changes of 1961," 36 Conn. B.J. 262, 266–67 (1962).

[5] Public Acts 1961, No. 306, § 1 provides as follows: "(1) No savings bank and no savings department of a state bank and trust company shall accept any deposit made by one person in trust for another unless the same is accompanied by a statement signed by the depositor giving the name and residence of the beneficiary. Such statement may also specify the terms of the trust thereby created.

clearly added to eliminate any need for the evidence of intent found lacking in *Fasano*. It survives verbatim in the present version of the statute, General Statutes § 36-110,[6] which also specifies as a condition of the presumption that the depositor may freely withdraw the funds on deposit during his lifetime. General Statutes § 36-110 (1) (a) (1).

The defendant claims that a trust established under the provisions of § 36-110 not only creates a valid statutory trust, even though it fails to satisfy the Statute of Wills, but also creates a valid present interest in the beneficiary, unless a contrary inten-

Unless such statement specifies to the contrary, it shall be conclusively presumed that the depositor intends to create a trust of the moneys at any time standing to the credit of such account upon the following terms: (a) The trust shall be revocable at will by the depositor during his life to the extent of withdrawals of, or charges against, the moneys to the credit of the trust made or authorized by the depositor; (b) if the depositor survives the named beneficiary, the named beneficiary's death shall terminate the trust and title to the moneys to the credit of the trust shall vest in the depositor free and clear of the trust; (c) if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and the moneys to the credit of the trust shall vest in the named beneficiary free and clear of the trust."

[6] "[General Statutes] Sec. 36-110. DEPOSITS IN TRUST. (1) (a) No savings bank, state bank and trust company or national banking association shall accept any deposit made by one person in trust for another unless the same is accompanied by a statement signed by the depositor giving the name and residence of the beneficiary. Such statement may also specify the terms of the trust thereby created. Unless such statement specifies to the contrary, it shall be conclusively presumed that the depositor intends to create a trust of the moneys at any time standing to the credit of such account upon the following terms: 1. The depositor during his life may withdraw, or authorize charges against, the moneys to the credit of the trust; 2. if the depositor survives the named beneficiary, the named beneficiary's death shall terminate the trust and title to the moneys to the credit of the trust shall vest in the depositor free and clear of the trust; 3. if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and the moneys to the credit of the trust shall vest in the named beneficiary free and clear of the trust . . . ."

tion is indicated at the time the account is established. In support of this view the defendant invokes the 1965 revision of § 36-110, which deleted the statement that "[t]he trust shall be revocable at will by the depositor during his life" and substituted the statement that "[t]he depositor during his life may withdraw, or authorize charges against, the moneys to the credit of the trust." She argues that the deletion of the term "revocable" can only mean that the legislature intended savings account trusts to become irrevocable, with the depositor authorized by statute to withdraw funds solely to effectuate the purposes of the trust. We do not agree.

An examination of the legislative history for § 36-110 reveals that the 1965 revision was intended to clarify the tax status of savings account trusts but to leave unaltered the substance of the statute. At hearings on the proposed revision, Representative Floyd A. Laird of Sharon described the modified bill as "an act clarifying the presumptions relating to savings deposits in trust to avoid unintended succession tax consequences" occasioned by the term "revocable," which signaled automatic liability to the state succession tax. See 11 H. R. Proc., Pt. 3, 1965 Sess., p. 1313. He later asserted that "this language which is changed, merely says the same thing but in a different way . . . ." 11 H. R. Proc., supra, 1314–15; see 11 S. Proc., Pt. 3, 1965 Sess., p. 1169; Conn. Joint Standing Committee Hearings, Banks, 1965 Sess., pp. 116–19, 133–34. There is no basis for the defendant's contention that after 1965 savings account trusts became irrevocable and that consequently the beneficiaries' interest vested irrevocably when the trusts were created.

Under the present statute it is perfectly clear, as we stated in *Manulik* v. *Devitt*, 176 Conn. 663, 668,

410 A.2d 469 (1979), that savings account trusts cannot be treated as irrevocable, because they allow the depositor an unlimited power of invasion in his lifetime. That conclusion does not, however, dispose of the argument in this case. Even as a tentative trust, a savings account trust might be viewed as conferring sufficient rights on a named beneficiary to make him a necessary party to a marital dissolution action in which such a trust was to be allocated by the court.

The question of when a beneficiary's interest in a savings account trust actually arises is a crucial and troublesome one that has long exercised courts and commentators. See I Scott, Trusts (3d Ed. 1967) §§ 58.4A, 330.3; "Savings Account Trusts: A Critical Examination," 49 Notre Dame Lawyer 686, 694 (1974); "Bank Account Trusts," 49 Va. L. Rev. 1189, 1192–94 (1963). With celebrated ambivalence, the savings account trust seems to gaze at once in opposite directions. As a revocable trust, it suggests that the beneficiary gains some interest, however impermanent, in the funds deposited at the time the trust is created. As a tentative trust, however, it suggests that the beneficiary gains no interest until the tentative quality of the trust is extinguished by the depositor's death. The two characterizations are not always used with precision; the Restatement asserts that "[a] tentative trust of a savings deposit can be revoked by the depositor at any time during his lifetime"; Restatement (Second), Trusts § 58, p. 157 (1959); effectively blurring any distinction between revocable and tentative trusts. See *United States* v. *State National Bank of Connecticut*, 421 F.2d 519, 520 (2d Cir. 1970); *In re Totten*, 179 N.Y. 112, 125–26, 71 N.E. 748 (1904). This imprecision in describing the consequences of

savings account trusts occurs because the strict terminology of trust doctrine applies imperfectly to a categorically hybrid construct that straddles the boundaries of trust, banking, and testamentary law.[7]

In some areas, however, the rights and obligations created by savings account trusts have been clarified. It is generally accepted that the funds on deposit may be reached by the depositor's creditors during his lifetime and, if he dies insolvent, after his death. See *In re Chaikowsky*, 94 Misc. 2d 70, 71, 404 N.Y.S.2d 510 (1978); Restatement (Second), Trusts § 58, p. 157 (1959); Scott, supra, § 58.5. The depositor remains liable for income tax on interest earned by the funds, and his estate assumes liability for federal estate and state succession taxes. See 26 U.S.C. § 674; General Statutes § 12-345; *Wasserman* v. *Commissioner of Internal Revenue*, 139 F.2d 778, 779–80 (1st Cir. 1944); Scott, supra, § 58.3, p. 535; "Savings Account Trusts," supra, 695; "Bank Account Trusts," supra, 1206. Although there is no such consensus on the right of a spouse to reach funds deposited in savings account trusts when computing an elective share of the depositor's estate, the prevailing view is that, since the decedent spouse exercised such complete power over the funds during his lifetime, the surviving spouse

---

[7] One situation roughly analogous to a marital dissolution suggests the uncertainty over the point at which the trust arises. The Restatement asserts that "[i]f the depositor becomes insane, his guardian can apply to the court for permission to revoke the trust and the court will grant such permission if, but only if and to the extent that, the use of the deposit is necessary for the welfare of the depositor." Restatement (Second), Trusts § 58, p. 157 (1959); see I Scott, Trusts (3d Ed. 1967) § 58.4, pp. 539–40. There is also authority for the view that a beneficiary may sue a third party who has wrongfully withdrawn funds, but only after the death of the depositor. I Scott, Trusts (3d Ed. 1967) § 58.4, pp. 540–41.

should be permitted to include them.[8] Restatement, supra, pp. 157–58; Scott, supra, § 58.5, pp. 544–48; "Savings Account Trusts," supra, 696–98; "Bank Account Trusts," supra, 1202–1205.

The unresolved issue before us, then, is whether the parties' children as beneficiaries of the savings account trusts established by their parents presently have a beneficial interest in those accounts sufficient to require their participation in the dissolution action before the trial court can take jurisdiction of the funds on deposit. In addressing that issue, we look first to the language of § 36-110 and then to this court's interpretation of that provision.

Section 36-110 requires a depositor establishing a trust account to furnish a signed statement giving the beneficiary's name and residence. It also, however, provides that "[s]uch statement may also specify the terms of the trust thereby created." Only in the absence of any statement to the contrary does the statute's conclusive presumption come into being. It is undisputed that the six Berlin Savings Bank accounts at issue were opened by the defendant without the addition of any terms limit-

---

[8] New York, for example, by statute includes savings account trusts in the decedent spouse's estate. See I Scott, Trusts (3d Ed. 1967) § 58.5, pp. 547–48; see Nortell, "Illinois' Tottering Totten Trusts," 63 Ill. B.J., 306, 309 (1975); "Bank Account Trusts," 49 Va. L. Rev. 1189, 1202–1205 (1963). The issue has not yet been squarely addressed in Connecticut, although it is clear that "neither husband nor wife acquires, by virtue of the marriage, any interest in the real or personal property of the other during that other's lifetime," and "either spouse may, in his lifetime, without the consent or knowledge of the other, make a valid gift or otherwise dispose of his property, to a third party." *Cherniack* v. *Home National Bank & Trust Co.*, 151 Conn. 367, 370, 198 A.2d 58 (1964); see *Hodge* v. *Hodge*, 178 Conn. 308, 314, 422 A.2d 280 (1979); Clark, "The Recapture of Testamentary Substitutes to Preserve the Spouse's Elective Share: An Appraisal of Recent Statutory Reforms," 2 Conn. L. Rev. 513, 522 (1970).

ing or otherwise describing the nature of the trust created. The defendant could have established irrevocable trusts for her children; she could also have authorized herself to make withdrawals only to further the children's education. In fact she chose to do neither. That the defendant understood her unlimited power over the funds is demonstrated by her testimony that she withdrew money from one of the children's accounts to buy a car and then replaced that money. The defendant now seeks to have the restrictions available to her at will imposed retroactively by this court through its interpretation of the controlling statute.

This court had occasion most recently to construe § 36-110 in *Manulik* v. *Devitt*, 176 Conn. 663, 410 A.2d 469 (1979), a case involving the ownership of a savings account trust following the depositor's death. We there concluded that "§ 36-110 gives effect to the intention of the depositor to make a 'poor man's will,' but at the same time to retain the sole right to the moneys during his lifetime. . . . By virtue of the statute's conclusive presumption regarding the depositor-trustee's intent, therefore, the defendant in the present case, as beneficiary, acquired all rights to the funds contained in the account upon the death of her mother." *Manulik* v. *Devitt*, supra, 668. Following *Manulik*, we read § 36-110 to mean that the beneficiary of an unqualified savings account trust acquires no legal interest in the funds on deposit until the death of the depositor. Although an earlier case; *Fruchtman* v. *Manning*, 156 Conn. 500, 242 A.2d 723 (1968);[9] made no

---

[9] We note the unusual circumstances of *Fruchtman* v. *Manning*, 156 Conn. 500, 242 A.2d 723 (1968), where, in the absence of any disclosure by the parties of applicable New York law, we applied our law to review a lower court finding of actionable misrepresentation by the beneficiary of a savings account trust in a New York bank.

mention of § 36-110 and instead required evidence of intent on the part of the depositor to create a beneficial interest in the beneficiary prior to the depositor's death, we conclude today that the statutory presumption replaces any such test of intent. Our reading of § 36-110 is further strengthened by a Second Circuit opinion, applying Connecticut law, which observed that "[i]t is well established that accounts deposited in a bank by the depositor in trust for another are tentative trusts only, revocable at will until the depositor dies or completes the gift in his or her lifetime by some unequivocal act or declaration." *United States* v. *State National Bank of Connecticut,* 421 F.2d 519, 520 (2d Cir. 1970). In the absence of any unequivocal act by the defendant rendering the savings account trusts irrevocable or otherwise transferring ownership rights to the beneficiaries, we conclude that Gerald and Deborah held no beneficial interest in the accounts at the time of the dissolution of their parents' marriage.

Courts in other jurisdictions have approved trial court decisions both including savings account trusts for the parties' children among divisible marital assets; *Meinders* v. *Meinders,* 305 N.W.2d 404, 407 (S.D. 1981); *Karr* v. *Karr,* 628 P.2d 267, 278 (Mont. 1981), cert. denied, 455 U.S. 1016, 102 S. Ct. 1709, 72 L. Ed. 2d 132 (1982); *Marrone* v. *Marrone,* 69 A.D.2d 898, 415 N.Y.S.2d 892 (1979); and reserving such accounts exclusively for the children's use. *St. Clair* v. *St. Clair,* 273 S.E.2d 352, 355–56 (W. Va. 1980); *Mitchely* v. *Mitchely,* 237 Ga. 138, 139, 227 S.E.2d 34 (1976). We are persuaded that, in light of our statutory presumption and the facts of the present case, the proper course is to hold these sav-

ings account trusts to be property of the marriage.[10] Since the trial court did not discuss its omission of the American Savings Bank accounts from its division of assets and neither party has challenged that omission, we need not decide whether the trial court properly had discretion to distinguish between those accounts and the Berlin Savings Bank accounts at issue.

Since Gerald and Deborah had acquired no legal interest in the funds on deposit, they were not necessary parties for the purpose of establishing the trial court's jurisdiction over those accounts.[11] See Nelson, Divorce and Annulment (2d Ed. 1961) § 22.06. The fact that Deborah was a minor at the time of trial in no way distinguishes her situation from that of her brother. Although it was within the trial court's discretion to appoint counsel for her; General Statutes § 46b-54; *Kearney* v. *State,* 174 Conn. 244, 251, 386 A.2d 223 (1978); the exis-

---

[10] Other courts have recently enlarged their definitions of marital property to include such financial interests as professional licenses and pension rights. See, e.g., *In re Marriage of Brown*, 15 Cal. 3d 838, 847–48, 544 P.2d 561 (1976); *In re Marriage of Horstman*, 263 N.W.2d 885, 891 (Iowa 1978); *Inman* v. *Inman*, 578 S.W.2d 266, 269–70 (Ky. Ct. App. 1979).

[11] Had either the children themselves or one of the original parties to the dissolution action filed a timely motion to make the children parties, such a motion for permissive joinder might well have been granted. A trial court generally has broad discretion to permit intervention, pursuant to our statutes; General Statutes §§ 52-102, 52-107, and 52-108; and our rules of practice; Practice Book §§ 83–85 and 99; even by those who are not necessary parties to the litigation. *Beccia* v. *Waterbury,* 185 Conn. 445, 455, 441 A.2d 131 (1981); *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 13, 437 A.2d 822 (1980); *Jones* v. *Ricker,* 172 Conn. 572, 574, 375 A.2d 1034 (1977). In the present case, it is clear that no motion to intervene or to permit intervention has ever been filed by anyone. The defendant has raised the issue of the joinder of the children for the first time in her appeal. Such a claim is not only untimely but is addressed to the wrong forum.

tence of the savings account trusts did not compel such an appointment.[12] The trial court did not err in failing to join the children as parties to their parents' dissolution action.

## II

The defendant also claims that the trial court erred in two respects by ordering that $3000 of the plaintiff's share of the savings account trusts be placed in escrow for payment of bills owing under a January 19, 1979 pendente lite order. First, the defendant reiterates her position that those funds were not available to the trial court for distribution to the plaintiff; we have already resolved that question against the defendant. Second, she argues that since the final judgment erased the pendente lite order under which the plaintiff had been directed to pay certain of the defendant's expenses, the trial court erred in rendering that judgment before the plaintiff's duties under the January 19 order were resolved by either payment of sums due or a finding of civil contempt.

The defendant is correct that the January 19, 1979 pendente lite order was "interlocutory in nature and terminate[d] with the rendition of the final judgment." *Rodearmel* v. *Rodearmel,* 173 Conn. 273, 276, 377 A.2d 260 (1977); see *Yontef* v. *Yontef,* 185 Conn. 275, 291, 440 A.2d 899 (1981); *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974); *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815 (1953). Such termination does not, however, mean that the trial court was powerless to hear testimony concerning the plaintiff's alleged viola-

[12] The trial court of course has broad discretion, on its own initiative, to appoint counsel for any minor child, where it deems it to be in the best interests of the child to do so. See General Statutes § 46b-54.

tions of the earlier order and to include remedies for those violations in its final judgment. The record makes clear that the trial court explicitly instructed the defendant's counsel to introduce testimony of sums owed to her by the plaintiff under the earlier order so that the court could consider that testimony in shaping its order.[13] Although the plaintiff can no longer be punished for contempt under the earlier order; see *Nowell* v. *Nowell*, 157 Conn. 470, 483, 254 A.2d 889, cert. denied, 396 U.S. 844, 90 S. Ct. 68, 24 L. Ed. 2d 94, after remand, 163 Conn. 116, 302 A.2d 260 (1969) ; he can be compelled by the trial court to pay $3000 for disputed claims incorporated in the new order. The trial court was not obliged to resolve the defendant's motion for contempt before rendering its judgment.

## III

The defendant next challenges the trial court's award of $175 per week in alimony to the defendant, its denial of child support for the parties' one minor child, and its division of the parties' assets. These decisions all rest within the trial court's discretion, guided by the statutory criteria provided by General Statutes §§ 46b-81 (c), 46b-82, and 46b-84 (b).[14] "The issue is not whether we would have made the

[13] At a hearing on January 18, 1980, the trial court observed that "I don't see any reason to hear this motion for contempt at this point. That can be taken as part of the testimony of what is owed to the defendant." The court then instructed the defendant's counsel to "bring it up in your testimony of your case to indicate, so that the court can make a decision on what kind of an order to make."

[14] General Statutes § 46b-81 (c) provides as follows: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability,

same assessment, but rather whether the trial court was bound to take a different view." *Yontef* v. *Yontef,* supra, 286.

The record amply supports the trial court's decision. Although the court found that the defendant had no income and was effectively unemployable, it also found both parties to be in very poor health and the plaintiff unable to maintain the level of his prior earnings. The plaintiff was not ordered by the March decision to pay child support for the parties' minor child "because she will be eighteen years of age in September and there is available for

estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

"[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

General Statutes § 46b-84 (b) provides as follows: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

her support over twenty-five thousand dollars from the marital assets." The trial court divided the parties' marital assets equitably, with the defendant receiving the family home valued at $90,000 and the plaintiff retaining his interests in the D.S.O. Manufacturing Company, the D.S.O. Realty Company, and the D.S.O. profit sharing plan, together valued at over $100,000. The trial court did not abuse its discretion in arriving at this allotment of assets; it was not bound to take a different view. *Yontef* v. *Yontef,* supra.

## IV

Finally, the defendant claims error in the trial court's denial of counsel fees because she has no resources from which to pay her legal expenses. This claim is rooted in her earlier contention, rejected by us, that the $25,000 savings account trusts were not available for distribution to the parties.

The standards guiding the trial court's grant or denial of counsel fees are set forth at General Statutes § 46b-82. See § 46b-62. Further, we have interpreted the statutory command to consider the parties' financial abilities to mean that "[w]here, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so." *Koizim* v. *Koizim,* 181 Conn. 492, 501, 435 A.2d 1030 (1980); see *Arrigoni* v. *Arrigoni,* 184 Conn. 513, 518-19, 440 A.2d 206 (1981). In light of the trial court's division of the savings account trusts between the parties, we conclude that the defendant had ample funds to pay her counsel fees.

There is no error.

In this opinion the other judges concurred.