[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#112)
 I. BACKGROUND
The plaintiff, Barbara McAuley, initiated suit on February 2, 1999, against Southington Savings Bank (the Bank or defendant) and Roland DeVoe in seven counts. Counts one and two are directed against the Bank. Counts three through seven are directed solely against Roland DeVoe and are not the subject of the present motion for summary judgment. The defendant filed an answer and special defenses and now moves for summary judgment on counts one and two. The plaintiff timely filed an objection and both parties filed supporting memoranda of law. The court heard oral argument September 18, 2000. For the reasons stated below, the court grants the defendant's motion.
The following facts from the pleadings, affidavits and exhibits are undisputed. In 1988, Alfreda DeVoe opened a certificate of deposit at the Bank, in trust for the benefit of her daughter, the plaintiff. (Complaint, count one, ¶ 4, count two, ¶ 4.) In March 1998, the defendant received through the mail a withdrawal slip requesting the full balance of the certificate of deposit be withdrawn and transferred into a checking account in Alfreda DeVoe's name. (Defendant's Exhibit B.) The withdrawal slip also contained a note stating, "I will be in CT. in 3 or 4 weeks to make other arrangement." (Defendant's Exhibit B.) The withdrawal slip was signed with Alfreda DeVoe's name, which the plaintiff alleges was forged by Alfreda DeVoe's husband, Roland DeVoe.[1]
(Complaint, count one, ¶ 5, count two, ¶ 5.) On May 1, 1998, Alfreda DeVoe appeared at the Bank and directed that an amount approximate to that transferred from the certificate of deposit be withdrawn from her checking account and deposited into six separate certificates of deposit in trust for persons other than the plaintiff. (Affidavit of Patricia Rossi, ¶¶ 9-11; Defendant's Exhibits F1-F6.) CT Page 14854 Alfreda DeVoe died May 26, 1998. (Complaint, count 1, ¶ 2, count 2, ¶ 2.)
 II. STANDARD OF REVIEW
Pursuant to Practice Book § 17-49, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v.St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, 252 Conn. 193, 201,746 A.2d 730 (2000). "Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orenstein v. OldBuckingham Corp., 205 Conn. 572, 574, 534 A.2d 1172 (1987); Mac's CarCity, Inc. v. American National Bank, 205 Conn. 255, 261, 532 A.2d 1302
(1987).
While "the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment.]" (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552,554-55, 707 A.2d 15 (1998). Summary judgment procedure would be defeated as a whole if the mere assertion that a material factual dispute existed could force a case to trial. See Great County Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997).
 III. DISCUSSION A. CT Page 14855
Count two of the plaintiff's complaint alleges negligence against the defendant based on the defendant's processing of the alleged forgery. The defendant argues it did not owe a duty to the plaintiff because, as a beneficiary of a trust account, the plaintiff had no legal interest in the funds of the certificate of deposit. The parties are in agreement as to the material facts. The only issue before the court is whether the defendant owed a duty to the plaintiff. "The existence of a duty is a question of law;" Mendillo v. Board of Education, 246 Conn. 456, 483,717 A.2d 1177 (1998); and a proper issue for the court to conclude on a motion for summary judgment.
"The elements in a negligence cause of action are duty, breach of that duty, causation and damages." Medcalf v. Washington Heights CondominiumAssoc., 57 Conn. App. 12, 16, 747 A.2d 532, cert. denied, 253 Conn. 923,754 A.2d 797 (2000). "The essence of actionable negligence is theinfringement of the legal right of another, or, in other words, the violation of a duty imposed by law in respect to another." (Emphasis added; internal quotation marks omitted.) Cowles v. New York. New Haven Hartford Railroad Co., 80 Conn. 48, 52, 66 A. 1020 (1907). "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." (Internal quotation marks omitted.) Bennett v. Connecticut Hospice, Inc., 56 Conn. App. 134, 137,741 A.2d 349 (1999). "Where there is no duty, there can be no negligence." (Internal quotation marks omitted.) Hassett v. Palmer,126 Conn. 468, 473, 12 A.2d 646 (1940).
"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . [W]ould the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. . . ." (Internal quotation marks omitted.) Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623,632-33, 749 A.2d 630 (2000). CT Page 14856
The court agrees with the plaintiff's argument that the alleged harm to the plaintiff was foreseeable by the defendant. The plaintiff was a named beneficiary on the account. She was the only beneficiary and remained so for approximately ten years. The bank could have foreseen that the plaintiff would be harmed by the wrongful withdrawal of funds from the trust account.
Nonetheless, the court must determine whether the "fundamental policy of the law" requires the defendant's liability to extend to this plaintiff. See id. The parties agree that the original certificate of deposit in the name "Alfreda DeVoe In Trust For Barbara McAuley" was a trust account governed by General Statutes § 36a-296.[2] "A savings account trust arises when a bank depositor establishes an account in trust for a named beneficiary while reserving to himself, as trustee, the right to withdraw the funds in that account at any time. Upon the trustee's death, ownership of the funds remaining on deposit passes automatically to the beneficiary." Salvio v. Salvio, 186 Conn. 311,314-15, 441 A.2d 190 (1982); see also General Statutes § 36a-296(a)(1). Courts read § 36a-296 (formerly § 36-110) "to mean that the beneficiary of an unqualified savings account trust acquires no legal interest in the funds on deposit until the death of the depositor." Id., 322.
"Where a third person wrongfully withdraws money from the account before the death of the depositor and without his consent, the beneficiary can, after the death of the depositor maintain a suit against him for the money so withdrawn. The beneficiary had a sufficient interest during the life of the depositor to entitle him to recover the money after the death of the depositor where the trust was not revoked by the depositor." IA A. Scott, Trusts (4th Ed. 1987) § 58.4, p. 224. The plaintiff asks the court to interpret "third person" to include the bank from which the funds were withdrawn and, therefore, allow a claim in negligence by a beneficiary against the Bank. The plaintiff cites, Silkv. Silk, 295 N.Y.S. 517, 162 Misc. 773 (1937), and Salvio v. Salvio, supra, 186 Conn. 311. The court finds, however, that neither case supports her argument. Silk did not involve a claim by a beneficiary against a bank. Rather, it involved a claim by a beneficiary against the alleged forger who withdrew funds from the trust account on which the plaintiff was named as beneficiary. Salvio cites to Scott as part of an illustration of the uncertainty of a beneficiary's rights to the funds of a savings account trust. Salvio v. Salvio, supra, 186 Conn. 320 n. 7.
In the present case, the savings account trust was created when Alfreda DeVoe signed the signature card opening the account and agreeing that the defendant would hold the funds for her in trust for the plaintiff. The CT Page 14857 account created an agreement between Alfreda DeVoe and the defendant. As such, the defendant cannot be considered a third person to the account against whom suit may be authorized. See IA A. Scott, supra, § 58.4, p. 224. The right of the plaintiff to the funds of the trust during the life of Alfreda DeVoe may have been sufficient to allow a claim against Roland DeVoe, the alleged forger and a third person to the trust as referenced by Scott. The court is unwilling, however, to extend this third person reference to the Bank. Accordingly, the court finds that the plaintiff's interest in the funds is insufficient to create a duty owed to her by the Bank or to maintain an action against the defendant Bank.[3]
The plaintiff argues the defendant owed her a duty because she had a legal interest as an owner of the account. In support of her position, the plaintiff argues that because Alfreda DeVoe was listed as the "primary owner" on the signature card; defendants's exhibit C; the court may infer that the plaintiff was intended as another owner. The plaintiff further argues that, because her name was typed onto the second line of the signature card, she was intended as an owner.
The signature card relied on by the plaintiff provides two lines for the owners' names to be typed and two lines for the authorized signatures. The first line for the owners' names is labeled "Primary Owner." The second line is labeled only "Name #2 (Print)." On the signature card at issue in the present action, "Alfreda DeVoe In Trust For" is typed onto the first line and "Barbara McAuley" is typed below the first line. Although the plaintiff suggests that her name appears on the second line indicating that she was meant as a second owner, the court does not find this to be a reasonable reading of the signature card. First, the plaintiff's name is not typed squarely on the second line, rather it is typed below the first line. Second, to read the plaintiff's name as a second owner would render the information on the first line meaningless as it would leave the first line to read "Alfreda DeVoe In Trust For" without indicating for whom the trust was intended. Similarly, the court finds that no reasonable fact finder could conclude that the plaintiff can be inferred as an additional owner based upon the words "primary owner" on the pre-printed form used by the bank. "Primary" was not inserted to indicate that, on the present account, additional owners exist. Furthermore, only Alfreda DeVoe's signature appears on the lines for authorized users. Although the plaintiff's name does appear on the card, it only appears in the context of how Alfreda DeVoe held the account: "Alfreda DeVoe In Trust For Barbara McAuley." Any other construction of the signature card would make no sense. The court finds the plaintiff was not an owner. of the account; therefore, the defendant did not owe her a duty as such.
The plaintiff further contends that the defendant owed her a duty as a CT Page 14858 third party beneficiary. "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. . . . Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach." (Citation omitted.) Gateway Co. v. DiNoia, 232 Conn. 223, 230-31,654 A.2d 342 (1995). "[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be . . . because the parties to the contract so intended." (Citations omitted; emphasis in original; internal quotation marks omitted.) Grigerik v. Sharpe,247 Conn. 293, 311-12, 721 A.2d 526 (1998).
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Tallmadge Bros. v. Iroquois GasTransmission System, 252 Conn. 479, 495, 746 A.2d 1277 (2000). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." Id., 498.
The court finds that the intent of the parties in creating the trust account was clear and unambiguous; therefore, the court will give effect to the account according to its terms. See, id. As discussed above, the owner of the account was Alfreda DeVoe in trust for Barbara McAuley. The plaintiff's name appeared on the signature card merely to indicate how Alfreda DeVoe held the account. Only Alfreda DeVoe was allowed to CT Page 14859 withdraw the funds pursuant to General Statutes § 36a-296 and the bank's signature card. On the face of the account, the bank accepted a direct obligation to Alfreda DeVoe only. Moreover, the court finds no evidence of an intent of the parties to undertake an obligation to the plaintiff. Had Alfreda DeVoe intended to give a greater interest to the plaintiff than is provided for by statute, she could have done so by simply indicating her intent in writing at the time the account was opened. See General Statutes § 36a-296(a)(1). She did not indicate an intention to do so and the court will not import such an interest.
The defendant did not owe a duty to the plaintiff.[4] Accordingly, the defendant's motion for summary judgment as to count two of the plaintiff's complaint is granted.
 B.
The first count of the plaintiff's complaint alleges the defendant violated § 42a-4-401 of the Uniform Commercial Code (UCC). The defendant moves for summary judgment on the ground that the plaintiff lacks standing to bring a claim under § 42a-4-401 because the plaintiff is not a "customer" as defined by the UCC. The plaintiff argues that she is a "customer" and an owner and, therefore, has standing.
"A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." General Statutes § 42a-4-401(a). "[A]n unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this article." General Statutes § 42a-3-403(a). "Unauthorized signature" is defined as a signature "made without actual, implied, or apparent authority and includes a forgery." General Statutes § 42a-1-201(43). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action." (Internal quotation marks omitted.) Crone v. Gill,250 Conn. 476, 479-480, 736 A.2d 131 (1999).
The UCC does not specifically confer standing. Courts have required a plaintiff to prove a relationship with the bank, such as a customer or an owner of an account. See Sheiman v. Lafayette Bank Trust Co.,4 Conn. App. 39, 44, 492 A.2d 219 (1985) ("Because the plaintiffs have not alleged that any relationship contemplated by General Statutes §42a-4-103 existed between themselves and [the bank], we conclude that the CT Page 14860 trial court was correct in finding that they had no rights in the instrument and no standing to sue thereon."). A "customer" is defined for purposes of § 42a-4-401 as "a person having an account with a bank or for whom a bank has agreed to collect items. . . ." General Statutes § 42a-4-104(a)(5). The plaintiff argues that, as a named beneficiary, she was an owner and, therefore, had an account with the defendant. She further argues, because she was a beneficiary on the account, the defendant had agreed to collect items for her.
As stated above, the court finds the plaintiff was not an owner of the account. Similarly, the same facts and reasoning support the court's finding that the plaintiff did not have an account with the defendant. Also, the Bank was not collecting items for the plaintiff. Under the UCC, § 42a-4-105(5), "`Collecting bank' means a bank handling an item for collection except the payor bank." According to § 42a-4-104(a)(9), an "item" includes an "instrument . . . handled by a bank for collection or payment." Under § 42a-3-104(j), a "certificate of deposit" is an "instrument." Here, Alfreda DeVoe's account was in the form of a certificate of deposit. See Exhibit A. As the financial institution responsible for paying the funds due, the Bank was handling Alfreda DeVoe's certificate of deposit for payment. It was not handling the certificate of deposit for collection. Therefore, plaintiff's claim that the Bank was collecting items for her is unwarranted.
Because the plaintiff is neither a customer nor an owner of an account, she lacks standing to bring a cause of action on the trust account under the UCC.[5] Accordingly, the defendant's motion for summary judgment on count one of the plaintiff's complaint is granted.
 CONCLUSION
For the foregoing reasons, the court grants the defendant's motion for summary judgment on counts one and two of the plaintiff's complaint.[6]
It is so ordered.
BY THE COURT,
Robert B. Shapiro Judge of the Superior Court