BARBARA MCAULEY *v.* SOUTHINGTON
SAVINGS BANK ET AL.
(AC 21461)

Foti, Dranginis and Hennessy, Js.

Argued December 4, 2001—officially released May 21, 2002

*Kristen Schultze Greene*, for the appellant (plaintiff).

*John F. Kania*, for the appellee (named defendant).

*Opinion*

HENNESSY, J. The plaintiff, Barbara McAuley, appeals from the judgment rendered by the trial court following the granting of a motion for summary judgment in favor of the defendant Southington Savings Bank (bank).[1] On appeal, the plaintiff claims that the court improperly granted the motion for summary judgment on the basis of its incorrect conclusions that (1) the bank owed no duty of care to the plaintiff, who was the named beneficiary on a certificate of deposit from which funds were wrongfully withdrawn pursuant to a forged withdrawal slip, (2) there was no genuine issue of material fact as to whether she was an owner of the certificate of deposit and (3) as a matter of law, the plaintiff lacked standing to bring an action against the bank for an alleged violation of General Statutes § 42a-4-401, which prohibits a bank from withdrawing funds from a customer's account on the basis of a forged item. We affirm the judgment of the trial court.

The following facts are undisputed. In 1988, Alfreda DeVoe invested in a certificate of deposit (CD) at the defendant bank. DeVoe held the CD in trust for the benefit of her daughter, the plaintiff in this action. In March, 1998, the bank received, through the mail, a withdrawal slip that requested that the full balance of the matured CD be transferred to DeVoe's checking account. The withdrawal slip also contained a note stating, "I will be in [Connecticut] in 3 or 4 weeks to make other arrangement[s]." The withdrawal slip was signed

---

[1] Roland DeVoe is also a defendant, but because the motion for summary judgment was not granted as to him, he is not involved in this appeal.

with Alfreda DeVoe's name, which the plaintiff alleges was forged by Alfreda DeVoe's husband, Roland DeVoe.[2] On April 6, 1998, the bank transferred the balance of the CD into Alfreda DeVoe's checking account. On May 1, 1998, Alfreda DeVoe appeared in person at the bank and directed that an amount approximate to that transferred from the CD be withdrawn from her checking account and deposited into six separate certificates of deposit in trust for persons other than the plaintiff.

In 1999, the plaintiff brought this action against the bank and Roland DeVoe by a seven count complaint. Counts one and two were directed at the bank and are the subject of this appeal. Counts three through seven were directed against Roland DeVoe and are not at issue in this appeal. In count one, the plaintiff alleges that Alfreda DeVoe's signature on the March 24, 1998 withdrawal slip was a forgery and the resulting transfer was a violation of General Statutes § 42a-4-401.[3] Count

---

[2] For purposes of the motion for summary judgment only, the bank did not dispute that the signature was a forgery.

[3] General Statutes § 42a-4-401 provides: "(a) A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.

"(b) A customer is not liable for the amount of an overdraft if the customer neither signed the item nor benefited from the proceeds of the item.

"(c) A bank may charge against the account of a customer a check that is otherwise properly payable from the account, even though payment was made before the date of the check, unless the customer has given notice to the bank of the postdating describing the check with reasonable certainty. The notice is effective for the period stated in section 42a-4-403 (b) for stop-payment orders, and must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it before the bank takes any action with respect to the check described in section 42a-4-303. If a bank charges against the account of a customer a check before the date stated in the notice of postdating, the bank is liable for damages for the loss resulting from its act. The loss may include damages for dishonor of subsequent items under section 42a-4-402.

"(d) A bank that in good faith makes payment to a holder may charge the indicated account of its customer according to: (1) The original terms

two, a negligence count, alleges that the bank breached its duty to the plaintiff by failing to ascertain that Alfreda DeVoe's signature on the withdrawal slip dated March 24, 1998, was a forgery. On July 12, 2000, the bank filed a motion for summary judgment as to both counts, which was granted. This appeal followed.

We initially set forth the applicable standard of review. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 250, 654 A.2d 748 (1995). Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994)." (Internal quotation marks omitted.) *Hernandez* v. *Cirmo*, 67 Conn. App. 565, 567, 787 A.2d 657, cert. denied, 259 Conn. 931, 793 A.2d 1084 (2002).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . [O]ur review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to

of the altered item; or (2) the terms of the completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper."

grant the movant's summary judgment motion was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Rangel* v. *Parkhurst*, 64 Conn. App. 372, 377–78, 779 A.2d 1277 (2001).

I

The plaintiff first claims that the court improperly concluded that with regard to the negligence count, the bank did not have a legal duty to protect her from the harm caused by the wrongful transfer of the balance of the CD to Alfreda DeVoe's checking account executed by a forged withdrawal slip.[4] Specifically, the plaintiff claims that the court should have concluded that the bank owed a duty of care to her because (1) she was a named beneficiary of the CD, (2) she was a foreseeable and readily identifiable plaintiff because of the "strong, immediate and direct" nexus between the bank's act of withdrawing the funds and her injuries, and, therefore, a finding of liability on the part of the bank would not have "create[d] limitless liability for an unending class of plaintiffs," and (3) the bank was a "third party" with respect to the CD against whom an action by a beneficiary is authorized for the wrongful withdrawal of money from an account before the death of the depositor. See IA A. Scott & W. Fratcher, Law of Trusts (4th Ed. 1987) § 58.4, p. 224.[5]

The bank argues that the court properly ruled that it owed a duty of care only to the owner of the CD and that the plaintiff did not have an ownership interest in the account. The bank claims that (1) the plaintiff's status as a named beneficiary of the CD, which was entitled "Alfreda DeVoe in Trust for Barbara McAuley,"

---

[4] The bank also claimed that even if it had owed a duty to the plaintiff and had violated that duty, it was still entitled to summary judgment because Alfreda DeVoe ratified the withdrawal by creating new accounts from the withdrawn funds. Because it found that the bank did not owe a duty to the plaintiff, the trial court did not reach this claim.

[5] See also *Salvio* v. *Salvio*, 186 Conn. 311, 320 n.7, 441 A.2d 190 (1982).

did not confer an ownership interest on her, (2) there are factors that indicate that Alfreda DeVoe was the sole owner of the account, such as the fact that the CD was created under Alfreda DeVoe's social security number and the only signature on the signature card was that of Alfreda DeVoe, and (3) although the plaintiff would have obtained an ownership interest in the CD if the CD still existed at the time of Alfreda DeVoe's death and the plaintiff survived Alfreda DeVoe, the first of those requirements was not met and, thus, the plaintiff did not have an ownership interest in the account. Finally, the bank argues that it is not a "third party" with respect to the CD, against whom a wrongful withdrawal action is authorized, because it is a party to the agreement that gave rise to the creation of the account.

In its memorandum of decision, the court noted that the parties were in agreement as to the material facts relevant to this claim and that the only issue before the court was whether the defendant owed a duty to the plaintiff.

"In reviewing a trial court's ruling on a motion for summary judgment when the material facts are undisputed, we must decide whether the trial court erred in concluding that the moving party was entitled to judgment as a matter of law. . . . [O]ur review of the ruling of the trial court is plenary, and we must determine whether the trial court's conclusions are legally and logically correct and find support in the facts appearing in the record." (Internal quotation marks omitted.) *Stosuy* v. *Stamford*, 65 Conn. App. 221, 222–23, 782 A.2d 198 (2001).

In the present case, the court granted the motion for summary judgment as to the plaintiff's negligence claim upon concluding that the defendant did not owe a legal duty to the plaintiff to verify the signature of the depositor on a withdrawal slip before transferring funds. "The

existence of a duty of care is a prerequisite to a finding of negligence." *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 614, 783 A.2d 462 (2001). Our Supreme Court has stated that "the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) Id., 616.

In its memorandum of decision, the trial court noted that although it found that the first prong of the test for the existence of a legal duty of care was satisfied, public policy precluded it from extending liability to the bank for the plaintiff's loss because the plaintiff did not have an ownership interest in the CD. The parties agreed at trial that the CD at the focus of this case was a trust account governed by General Statutes § 36a-296.[6] Thus, applying our standard of review, we must

---

[6] General Statutes § 36a-296 (a) (1) provides: "No bank shall establish any deposit account in which deposits are to be held by one natural person in trust for another natural person unless the depositor provides the bank with the name and a residential address for the beneficiary, upon establishing the deposit account or thereafter at the request of the bank. The depositor may also provide the bank with a writing signed by the depositor specifying the terms of the trust under which such deposit account is to be held. Unless such writing specifies to the contrary, it shall be conclusively presumed that the depositor intends to create a trust of all funds credited to the deposit account from time to time upon the following terms: (A) The depositor during his life may withdraw, or authorize charges against, such funds; (B) if the depositor survives the named beneficiary, the named beneficiary's death shall terminate the trust and title to the deposit account shall thereupon vest in the depositor free and clear of the trust; (C) if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and title to the deposit account shall thereupon vest in the named beneficiary free and clear of the trust."

determine whether the court's conclusion that public policy precluded it from extending liability to the bank for the plaintiff's loss of her beneficial interest in the trust account was "legally and logically correct."

Our Supreme Court's reading of General Statutes § 36-110, now § 36a-296, in *Salvio* v. *Salvio*, 186 Conn. 311, 322, 441 A.2d 190 (1982), is dispositive of our resolution of this question. In *Salvio*, our Supreme Court interpreted § 36-110, now § 36a-296, to provide that the beneficiary of an unqualified savings account trust acquires no legal interest in the funds on deposit *until the death of the depositor*. In the present case, the trust account entitled "Alfreda DeVoe in Trust for Barbara McAuley" matured, was not renewed and the depositor redistributed its funds. The court was correct in finding that the plaintiff, a named beneficiary to the trust account, did not have a legal interest in the trust account at the time of Alfreda DeVoe's death.

Accordingly, we conclude that the court properly ruled that public policy precluded it from finding that a duty of care was owed to the plaintiff by the bank, and, thus, its ruling was legally and logically correct.[7]

II

The plaintiff next claims that the court improperly granted the motion for summary judgment on the negligence count because there was a genuine issue of material fact as to whether she was an owner of the CD based on the information found on the signature card. Specifically, the plaintiff argues that she was an owner because (1) her name was typed on the signature card near a preprinted "name #2" line and (2) the preprinted

---

[7] Additionally, we conclude that the court's finding of no liability to the plaintiff on the part of the bank did not, as the plaintiff suggests in her brief, "effectively allow banks to commit negligence on a regular basis without any accountability." Rather, it reflects the fact that a depositor or a depositor's estate is the proper plaintiff in such an action against a bank.

words "Primary Owner" that appeared before Alfreda DeVoe's name denoted that Alfreda DeVoe was not the *sole* owner of the account.

The court addressed both of these arguments before granting the motion for summary judgment in favor of the bank. The court found that the evidence established that the plaintiff's name was not in fact typed on the second line, but rather was typed below the first line as a continuation of the wording on the first line which read as follows: "Alfreda DeVoe in Trust for . . . ." The court's reading of the plaintiff's name together with the first line of text logically explained the purpose of the plaintiff's name on the card. It reasonably concluded that the plaintiff's name was on the card to make clear the context in which Alfreda DeVoe held the CD.

To accept the plaintiff's interpretation of the signature card would render the trust language on line #1 meaningless. It would also require us to import into the signature card a meaning that is not there, thereby defeating the intent of the depositor and the bank. The court's interpretation gives effect to the wording by relating the plaintiff's typewritten name to the line above it. It is the policy of the court to give effect to all wording in a document. "When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) *Bonito* v. *Cambridge Mutual Fire Ins. Co.*, 64 Conn. App. 487, 493, 780 A.2d 984, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). The court's reading of the signature card is the only one that would give effect to the trust language and, thus, it is the only logical reading of the signature card. Accordingly, we conclude that the court's determination that no reasonable person could find that the plaintiff was an owner because of

the location of her name on the signature card was legally and logically correct and supported by the facts in this case.

The court also found that the occurrence of the pre-printed words "Primary Owner" before Alfreda DeVoe's signature on the signature card could not logically be read to alter the intent of the parties to create a trust account with DeVoe as the sole owner. We agree.

"[W]here there is a printed form . . . and other words are inserted [in the printed form], in writing or otherwise, it is to be assumed that they take precedence over the printed matter." (Internal quotation marks omitted.) *Total Property Services of New England, Inc.* v. *Q.S.C.V., Inc.*, 30 Conn. App. 580, 591, 621 A.2d 316 (1993). We cannot say that a single line on a preprinted form should enjoy the same presumption of legitimacy as the contradictory language added to the document by the parties. We think it unlikely that the parties meant for the preprinted label "Primary Owner" to modify the ownership interests in the CD in a manner inconsistent with their intentions as spelled out in the typewritten trust language.

In addition, as was the case with the plaintiff's first argument, we note that the plaintiff's proposed interpretation of the signature card would negate the trust language, "in trust for," that followed Alfreda Devoe's typewritten name on the card. We conclude, therefore, that the trial court's finding that there was no genuine issue of material fact as to ownership of the CD is legally and logically correct and it is supported by the facts in the record. Accordingly, the trial court properly rendered summary judgment as a matter of law as to the second claim.

III

The plaintiff's final claim is that the court improperly found that, as a matter of law, she lacked standing to

bring an action against the bank pursuant to § 42a-4-401.[8] Specifically, the plaintiff argues that she has standing to bring an action against the bank because (1) she was an intended third party beneficiary to the contract between Alfreda DeVoe and the bank and (2) she was a customer of the bank for purposes of § 42a-4-401.

The plaintiff argues that her status as a named beneficiary to the trust account makes her an intended third party beneficiary to the contract between Alfreda DeVoe and the bank. We disagree. "The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. . . . [T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." (Citations omitted; internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 261, 765 A.2d 505 (2001). The trial court reasoned that the contract between Alfreda DeVoe and the bank did not create a direct obligation on the part of the bank to pay the proceeds of the trust account to the plaintiff. Rather, the bank's obligation to the plaintiff would arise only if she survived Alfreda DeVoe and the account was still in existence. We, therefore, conclude that because Alfreda DeVoe could have given the plaintiff an ownership interest in the account, thereby creating a direct obligation on the part of the bank, but did not, the plaintiff was not a third party beneficiary to the contract.

We find equally unavailing the plaintiff's contention that she was a customer of the bank because the bank

___

[8] See footnote 3.

"agreed to 'collect items' " for her.[9] In its well reasoned analysis, the trial court stated, "[T]he bank was not collecting items for the plaintiff. Under the [Uniform Commercial Code], [General Statutes] § 42a-4-105 (5), collecting bank means a bank handling an item for collection except the payor bank. According to [General Statutes] § 42a-4-104 (a) (9), an item includes an instrument . . . handled by a bank for collection or payment . . . . Under [General Statutes] § 42a-3-104 (j), a certificate of deposit is an instrument. Here, Alfreda DeVoe's account was in the form of a certificate of deposit. . . . As the financial institution responsible for paying the funds due, the bank was handling Alfreda DeVoe's certificate of deposit for payment. It was not handling the certificate of deposit for collection. Therefore, the plaintiff's claim that the bank was collecting items for her is unwarranted." (Internal quotation marks omitted.)

We agree with the analysis of the court and conclude that the plaintiff does not fall within the definition of a "customer" for purposes of § 42a-4-401 and, as such, does not have standing to bring an action pursuant to that statute.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] General Statutes § 42a-4-104 (a) provides in relevant part: "In this article, unless the context otherwise requires . . . (5) 'customer' means a person having an account with a bank or for whom a bank has agreed to collect items, including a bank that maintains an account at another bank . . . ."