ELSA A. HODGE *v.* LANCELOT J. HODGE

LOISELLE, BOGDANSKI, LONGO, PETERS and RUBINOW, Js.

Argued January 3—decision released July 17, 1979

*Peter W. Rotella,* with whom, on the brief, was *Abram A. Washton,* for the appellant (defendant).

*David L. Hemond,* with whom, on the brief, was *Griswold Morgan,* for the appellee (plaintiff).

RUBINOW, J.  By process dated January 15, 1973, Elsa Arrindell Hodge (the wife) instituted a divorce action against Lancelot Joseph Hodge (the husband).  The process consisted only of a writ of summons and a complaint; there was no direction to the officer to make either an attachment or a garnishment.  The writ of summons described the address of the husband as 1504 Sheridan Avenue, Bronx, New York.

The officer made no attachment, no garnishment, and no manual or abode service of the process. Instead, pursuant to an order of notice issued by a clerk of the Superior Court under General Statutes § 46-17 (now, as amended, § 46b-46 [a]), the officer mailed to the husband "a true and attested copy" of the "writ, summons, and complaint" and the order of notice, by registered mail addressed to the husband's Bronx, New York, address.

The complaint contained allegations concerning the date and place of the marriage of the parties, the residence of the wife, the grounds for the divorce, and the names, and dates of birth, of the children of the marriage. In the complaint, there was no metes-and-bounds description of any real property allegedly owned by the husband, nor any general allegation, such as the one suggested by Practice Book, 1963, Form 396 (now Practice Book, 1978, Form 504.1), that the husband owned real estate. The prayer for relief, with respect to alimony, was a general claim for "alimony"; there was no prayer that the court assign to, or vest in, the wife the husband's interest in property in Connecticut.

The husband filed no appearance in the action. On August 7, 1973, the court (*Wright, J.*) found that the husband had received actual notice "that said complaint is pending" and that the allegations of the complaint are "proved and true."[1] The court rendered judgment granting a divorce to the wife, awarding custody of the minor children to the wife, ordering the husband to pay $15 per week for the support of the minor children, and ordering that "in lieu of all other alimony," the husband's right, title, and interest in a designated tract of land in Connecticut "is hereby transferred and vested in the . . . [wife]." The husband did not file an appeal from any of the provisions of that judgment.

[1] The judgment file also contains a finding by the court "that said writ and complaint" were "duly served on the defendant." Because relevant portions of the return of the officer refer only to the order of notice, that finding may logically be construed only as a finding that the officer complied with the order of notice. The parties to the present action agree that the court did not have in personam jurisdiction over the husband.

On December 27, 1977, the husband filed a motion for modification of the court's judgment. Thereafter, he filed an amended motion for modification, in which he petitioned the court to "modify the orders of support and to eliminate the provision re alimony in the August 7, 1973 judgment of divorce." On April 10, 1978, on the ground that there had been no in personam jurisdiction over the husband, the court (*Jacobs, J.*) modified the judgment by vacating the order for support. The husband has appealed from the court's refusal to modify the judgment by also eliminating the provision concerning the transfer to the wife of the husband's interest in Connecticut land.[2]

## I

The parties have used the court's memorandum of decision on the motion to modify for the purpose of determining the conclusions of the court. In the absence of a finding, we may use that memorandum of decision for the same purpose. *White* v. *White*, 138 Conn. 1, 5, 81 A.2d 450 (1951). The court, in that memorandum of decision, concluded that a Connecticut court, on the basis of the notice by registered mail to the husband, may issue a decree "that is effective to the extent that it can be satisfied out of husband's in-state property." The court also concluded that, accordingly, the transfer to the wife of the husband's interest in his Connecticut property is "binding" on the husband.

In this appeal, the husband makes two claims: the first is that, without in personam jurisdiction

[2] Because neither party requested a finding and none was made, our statement of the facts is based on undisputed facts set forth in the briefs of the parties; Practice Book, 1978, §§ 3040 (b), 3041 (b); and on facts appearing on the record. *Robertson* v. *Robertson*, 164 Conn. 140, 143, 318 A.2d 106 (1972).

over the husband, the court did not have the power to transfer the husband's property because the property had not been brought under the control of the court by an attachment; the second is that mailing the summons, complaint, and order of notice to the husband did not constitute adequate notice to him that the wife intended to claim an order vesting title in her. The wife claims that, under the provisions of General Statutes § 52-22[3] and the decision of this court in *Mendrochowicz* v. *Wolfe*, 139 Conn. 506, 95 A.2d 260 (1953), the court had the power to pass title to the husband's Connecticut property, although there was neither in personam jurisdiction nor an attachment. The wife also disputes the husband's claim concerning the adequacy of the notice.

## II

As the wife contends, in *Mendrochowicz* this court held that the trial court had the power to enter a valid judgment there even though there was no attachment[4] and no in personam jurisdiction. *Mendrochowicz* v. *Wolfe*, supra, 511. *Mendrochowicz*, however, is a different kind of case from the present case; *Mendrochowicz* is an action in rem, whereas the present case is an action quasi in rem.

---

[3] "[General Statutes] Sec. 52-22. COURTS OF EQUITY MAY PASS TITLE TO REAL ESTATE. The superior court in the exercise of its equitable jurisdiction may pass the title to real estate by decree, without any act on the part of the defendant, when in its judgment it is the proper mode to carry the decree into effect. Such decree, having been recorded in the land records in the town where such real estate is situated, shall, while in force, be as effectual to transfer the same as the deed of the defendant."

In 1976, by Public Act No. 76-436, the words "The superior court in the exercise of its" were substituted for "Any court of equitable" in the beginning of General Statutes § 52-22. This amendment does not affect the issues in this case, because the statute, as worded in 1973, applied to the Superior Court.

[4] The attempted attachment was "abortive." *Mendrochowicz* v. *Wolfe*, 139 Conn. 506, 512, 95 A.2d 260 (1953).

There is no statement of the difference between an action in rem and an action quasi in rem that will serve all purposes. For the purpose, however, of determining the essential characteristics of the type of case that the holding in *Mendrochowicz* applies to, we can state the difference between the two types of actions in the following way: an action in rem is an action brought to enforce or protect "a pre-existing interest in particular property";[5] an action quasi in rem is an action brought to "apply the property to satisfy a personal claim." See note, "The Requirement of Seizure in the Exercise of Quasi in Rem Jurisdiction: *Pennoyer* v. *Neff* Re-Examined," 63 Harv. L. Rev. 657, 659 (1950) (hereinafter cited as note, "The Requirement of Seizure"). In *Mendrochowicz,* the principal prayer for relief[6] was a prayer to set deeds aside and to

---

[5] Restatement, Judgments (1942) § 32 comment a, defines an "in rem" proceeding as a proceeding "brought to affect the interests in the thing not merely of particular persons but of all persons in the world." This definition follows the view expressed by Mr. Justice Holmes (then Chief Justice of the Massachusetts Supreme Judicial Court) in *Tyler* v. *Judges of the Court of Registration*, 175 Mass. 71, 76, 55 N.E. 812, appeal dismissed, 179 U.S. 405, 21 S. Ct. 206, 45 L. Ed. 252 (1900): "If . . . the object [of a suit] is to bar indifferently all who might be minded to make on objection of any sort against the right sought to be established, and if any one in the world has a right to be heard on the strength of alleging facts which, if true, show an inconsistent interest, the proceeding is in rem." Nevertheless, "[a]ctions which seek 'to affect the interests of particular persons in a thing,' which are called 'quasi in rem' by the Restatement, are almost universally included as 'in rem' actions by general usage today." James, Civil Procedure p. 612 n.5 (1965). The usage in Connecticut follows the "general usage." See, e.g., *Atlas Garage & Custom Builders, Inc.* v. *Hurley*, 167 Conn. 248, 252, 355 A.2d 286 (1974); *Mendrochowicz* v. *Wolfe*, 139 Conn. 506, 511, 95 A.2d 260 (1953); 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 44, p. 176 (1970).

[6] Although there was a claim for money damages in the case, that claim was "secondary" to the prayer to have the deeds set aside. *Mendrochowicz* v. *Wolfe*, 139 Conn. 506, 510, 95 A.2d 260 (1953).

have the plaintiff declared the owner of the property described in the deeds. The action was an action in rem because the plaintiff was not seeking to apply that property to the payment of a personal claim but to enforce her preexisting equitable interest in the property.

In the present case, the wife's claim for alimony was not a claim concerning a preexisting interest in her husband's property. "In this state neither a husband nor a wife acquires, by virtue of marriage, any interest in the real or personal property of the other during the other's lifetime. General Statutes § 46-9;[7] *Cherniack* v. *Home National Bank & Trust Co.,* 151 Conn. 367, 370, 198 A.2d 58; *Stewart* v. *Stewart,* 5 Conn. 317, 321." *Tobey* v. *Tobey,* 165 Conn. 742, 748, 345 A.2d 21 (1974).

Further, contrary to the wife's claim, the present action did not become an action in rem merely because the judgment operated in rem. See *Failing* v. *Failing,* 4 Ill. 2d 11, 122 N.E.2d 167 (1954). Whether the holding in *Mendrochowicz* applies to a given case is determined by the allegations of the complaint and the prayer for relief, not by the judgment that is rendered on the merits. Indeed, in *Mendrochowicz* no judgment on the merits had been rendered. It was from the allegations of the complaint and the prayer for relief that this court determined whether the action was one in rem. A judgment that operates in rem does not make the action an action in rem if the allegations of the complaint and prayer for relief requisite for an action in rem are not present, and they were not present in this

[7] Now General Statutes § 46b-36. The relevant provision is: "Neither husband nor wife shall acquire by the marriage any right to or interest in any property held by the other before or acquired after such marriage, except as to the share of the survivor in the property as provided by section 45-273a."

case. Accordingly, the present action was not an action in rem, and the wife's claim that the decree awarding the property to her was a valid decree under the in-rem rule of *Mendrochowicz* is untenable.

## III

The conflicting claims of the parties with respect to the adequacy of the notice in this case are not concerned with the adequacy of notice that the action was pending, but with the adequacy of notice that the court might adjudicate the issue whether the husband should be deprived of his property by a decree under General Statutes § 52-22. We have recognized the right of a litigant to "fair notice" that a court may render a judgment with respect to a given issue. *Winick* v. *Winick,* 153 Conn. 294, 298, 216 A.2d 185 (1965).

In determining what the husband ought to have had "fair notice" of from the copy of the complaint that he received, this court has to charge him with knowledge of the relevant Connecticut statutes, and their interpretation, even though he may have been totally unfamiliar with them. See *Stevens* v. *Neligon,* 116 Conn. 307, 311, 164 A. 661 (1933). A relevant statute, General Statutes § 46-21 (now, as amended, General Statutes §§ 46b-81 and 46b-82), reads, in part: "The superior court may assign to any woman divorced by such court a part of the estate of her husband and, in addition thereto or in lieu thereof, may order alimony to be paid from the husband's income." This statute empowers the court, as an incident to a divorce, to decree that the husband pay alimony to the wife "in terms of money or property." *Wright* v. *Wright,* 93 Conn. 296, 300, 105 A. 684 (1919). Although the word "alimony" does not appear in that part of the stat-

ute dealing with an "assignment" of the husband's property to the wife, "the idea of . . . [alimony] is clearly embraced" in that part of the statute. *Lyon* v. *Lyon,* 21 Conn. 185, 197 (1851). The wife's claim for alimony, therefore, gave the husband "fair notice" that the court might "assign" to the wife some of his property if she was granted a divorce. If we charge the husband with notice of the provisions of General Statutes § 52-22, as we must, the "fair notice" that the court might "assign" some of his property to the wife, also was "fair notice" that the court might elect to make the "assignment" effective by a decree transferring property to the wife, under the provisions of that statute. The husband's claim of lack of notice that a decree might be entered under General Statutes § 52-22 is without merit.

## IV

As noted previously, the husband also claims that the decree under General Statutes § 52-22 is not valid as a decree quasi in rem because the husband's property was not attached prior to judgment. In making this claim, the husband relies on *Carter* v. *Carter,* 147 Conn. 238, 159 A.2d 173 (1960). In that case, the defendant was a nonresident over whom the court did not have in personam jurisdiction. He owned property in Connecticut, but an attempted attachment of it was defective. This court held that the trial court could not render a valid quasi in rem judgment for alimony, because the defendant's property had not been effectively attached.

The principle that procedural due process for quasi in rem judgments requires an attachment of the defendant's property was originally enunciated in *Pennoyer* v. *Neff,* 95 U.S. 714, 24 L. Ed. 565 (1877) and was reiterated in *Pennington* v. *Fourth National Bank,* 243 U.S. 269, 37 S. Ct. 282, 61 L. Ed.

713 (1917). If those cases still retained their vitality as establishing constitutional imperatives, we would, of course, be bound by them. In matrimonial actions particularly, however, the distinct trend of the decisions has been in derogation of the authority of those cases. "In a line of cases involving alimony awards against nonresident husbands who own land within the state, some courts have omitted the requirement of seizure and have been satisfied with an assertion in the complaint that relief was being sought out of specific, described property." Note, "The Requirement of Seizure," supra, 660. "The Supreme Court's language in the *Pennoyer* Case as to bringing the property within the court's control by attachment or an equivalent act 'in the first instance,' and its statement in the *Pennington* Case that one essential of due process is 'seizure at the commencement of the proceedings,' have not been literally followed by any court . . . . A number of courts have stated that there must be a legal seizure of the defendant's property before the final judgment in order to subject it to claims for alimony, support, or maintenance on only substituted or constructive service. . . . An even greater number of courts, however, have stated that there need not be a prejudgment seizure in order to subject the property to claims for alimony, maintenance, or support on constructive or substituted service, and these statements are supported by many decisions upholding decrees reaching the property although there was no prejudgment legal seizure." Annot., "Jurisdiction on Constructive or Substituted Service, In Divorce or Alimony Action, to Reach Property Within State," 10 A.L.R.3d 212, 216–17 (1966).

Although those "many decisions" did not recognize the authority of *Pennoyer* and *Pennington* in

actions quasi in rem, they did not develop any generally-accepted new rule to replace that authority. The Supreme Court of the United States, however, in *Shaffer* v. *Heitner,* 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977), enunciated both a new rule and its rationale, superseding both the rule and rationale in *Pennington* and *Pennoyer*. That new rule is that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in [*International Shoe Co.* v. *Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)] and its progeny." *Shaffer* v. *Heitner,* supra, 212. Those standards require, in brief, that, for a court to have power to render a valid judgment in a civil suit, if the defendant is not present "within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co.* v. *Washington,* supra, 316. Those standards apply to judgments in rem or quasi in rem, as well as to judgments in personam, and to judgments against a natural person, as well as to judgments against a corporation. *Shaffer* v. *Heitner,* supra, 204 n.19, 212.

The rationale of *Shaffer* is that, contrary to the rationale in *Pennoyer,* the object of an action in rem or quasi in rem is not a judgment that affects a thing; rather, the object of an action in rem or quasi in rem is a judgment that affects the defendant's interests in that thing.

"The case for applying to jurisdiction in rem[8] the same test of 'fair play and substantial justice' as

---

[8] For convenience, *Shaffer* uses the phrase "in rem" in place of "in rem and quasi in rem." *Shaffer* v. *Heitner,* 433 U.S. 186, 199n, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

governs assertions of jurisdiction in personam is simple and straight-forward. It is premised on recognition that '[t]he phrase, "judicial jurisdiction over a thing," is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing.' Restatement (Second), Conflict of Laws (1971) § 56. This recognition leads to the conclusion that in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.' The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*" *Shaffer* v. *Heitner,* supra, 207.

The rationale of the decision in *Carter,* like the rationale of the decision in *Pennoyer,* was that a judgment quasi in rem is a judgment affecting a thing.[9] Consistently with that rationale, *Carter* held (p. 241) that the trial court had jurisdiction to enter a valid quasi in rem judgment affecting the defendant's property, only if the "property [was brought] within the jurisdiction of the court" by a prejudgment attachment.[10] The rationale for the decision

---

[9] *Carter* v. *Carter,* 147 Conn. 238, 241, 159 A.2d 173 (1960), speaks of a "decree binding on the property."

[10] This requirement of a prejudgment attachment of real estate seems inconsistent with the absence of any such requirement in in rem cases. In the latter cases, the ground of jurisdiction is the presence of the land within the state. *Arndt* v. *Griggs,* 134 U.S. 316, 320, 10 S. Ct. 557, 33 L. Ed. 918 (1890) (state has control over property within its limits and "the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto").

in *Carter* was repudiated by *Shaffer's* repudiation of the *Pennoyer* fiction that an action quasi in rem is an action against property.

Under *Shaffer,* supra, 209, there is now a single standard for determining whether jurisdiction exists in personam, or in rem, or quasi in rem.[11] That standard, "minimum contacts," having now been established by the Supreme Court of the United States as a requirement of the federal constitution, is "absolutely binding on us." See *Wojculewicz* v. *Cummings,* 143 Conn. 624, 629, 124 A.2d 886 (1956). Under that standard, bringing the defendant's property "within the jurisdiction of the court" by a prejudgment attachment is not a due-process prerequisite for jurisdiction quasi in rem. Accordingly, we overrule *Carter* to the extent that that case holds that a state court has no jurisdiction to render a judgment quasi in rem if there has been no prejudgment attachment. *Leszczymski* v. *Radel Oyster Co.,* 102 Conn. 511, 528, 129 A. 539 (1925) (*Kennerson* v. *Thames Towboat Co.,* 89 Conn. 367, 94 A. 372 [1915] overruled because later decision of the Supreme Court of the United States on constitutional grounds enunciated rule inconsistent with *Kennerson*).

## V

The underlying substantive question in this case is: does *Carter* make the 1973 judgment concerning the defendant's in-state property a nullity, as

---

[11] Although the single standard applies to both judgments in personam and judgments quasi in rem, there are, of course, still significant differences between the force that each type of judgment has. For example, quasi in rem judgments generally are not within the scope of the full-faith-and-credit clause of the federal constitution, may not be enforced by contempt proceedings, may be satisfied only out of in-state property, and are not res judicata.

the husband claims. To answer that question, we have to decide whether our present decision overruling *Carter* applies retroactively to the 1973 judgment. If our present decision overruling *Carter* does not apply to a judgment rendered in 1973, we must treat *Carter* as being in force in 1973 and, in that event, under *Carter,* the 1973 judgment is a nullity. If our decision overruling *Carter* applies retroactively, and we do not treat *Carter* as controlling, even in 1973, then, on the present record, the 1973 judgment is effective.

The extent to which an overruling decision will be applied retroactively is now generally held to be a matter for the overruling court to determine. "As a matter of constitutional law, retroactive operation of an overruling decision is neither required nor prohibited. Accordingly, most courts now treat the question of how an overruling decision should operate as one of judicial policy rather than of judicial power, and recognize that varying results may be reached, depending on the particular circumstances presented and the particular rule affected." Annot., "Prospective or Retroactive Operation of Overruling Decision," 10 A.L.R.3d 1371, 1378 (1966).[12]

For purposes of the present litigation, two "judicial policy" considerations are paramount. The first is the principle of the finality of judgments. "The

[12] That annotation cites numerous decisions in support of the quotation. See also *Reed* v. *Reincke,* 155 Conn. 591, 596, 236 A.2d 909 (1967) (retroactive application not given to *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 [1965]); and Leach, Property Law Indicted 16 (1967) ("Is there any reason either in our system of law or in our constitutional doctrines which denies to a court the ability, in overruling its prior decisions to announce the degree to which the new law is to be given retroactive application? Major developments in the last two decades answer this question in the negative.")

modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." *Monroe* v. *Monroe,* 177 Conn. 173, 178, 413 A.2d 819 (1979). The unappealed 1973 judgment was more than four years old when the present motion was filed, as noted previously. As between nonretroactivity, which will cause that judgment to be a nullity, and retroactivity, which will not cause that judgment to be a nullity, the principle of the finality of judgments persuades us to elect retroactivity.

The second consideration arises from the circumstance that the 1973 judgment is a judgment affecting the title to real estate. A state has "strong interests in assuring the marketability of property within its borders." *Shaffer* v. *Heitner,* supra, 208. Here a link in the chain of title is a judgment that, on the basis of the recitations in the judgment file, was a valid judgment. Further, it is a judgment that is presumed to have been rendered by a court having jurisdiction. *Monroe* v. *Monroe,* supra, 15. The marketability of the title depends on the validity of that judgment. As between nonretroactivity, which will impair the marketability of that title by invalidating that judgment, and retroactivity, which will not invalidate that judgment, the state's interest in marketability persuades us to elect retroactivity. We hold that our decision overruling *Carter* applies retroactively to the 1973 judgment, and we do not sustain the claim of the husband that *Carter* makes the 1973 judgment a nullity. There is no basis, in the record, for us to determine

whether the 1973 judgment is vulnerable on grounds other than those urged by the husband. Because no other grounds of vulnerability have been established, and the grounds urged by the husband have not been sustained, the judgment has not been successfully attacked.

There is no error.

In this opinion the other judges concurred.