336 Conn. 633 MAY, 2021 633

JPMorgan Chase Bank, National Assn. *v.* Essaghof

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION *v.* ROGER
ESSAGHOF ET AL.
(SC 20090)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Kahn, Ecker and Vertefeuille, Js.*

*Syllabus*

Pursuant to statute (§ 49-1), "[t]he foreclosure of a mortgage is a bar to any
further action upon the mortgage debt, note or obligation against the
person or persons who are liable for the payment thereof . . . ."

Pursuant further to statute (§ 49-14 (a)), however, "[a]t any time within
thirty days after the time limited for redemption has expired, any party to
a mortgage foreclosure may file a motion seeking a deficiency judgment."

The plaintiff bank sought to foreclose a mortgage on certain of the defen-
dants' real property after they had defaulted on a loan that had been
modified by agreement. The trial court rendered a judgment of strict
foreclosure, from which the defendants appealed to the Appellate Court.
While the appeal was pending and the defendants were still occupying
the property, the trial court granted the plaintiff's motion for equitable
relief and ordered the defendants to reimburse the plaintiff for future
property taxes and homeowners insurance premiums that the plaintiff
would pay during the pending appeal. The defendants filed an amended
appeal with the Appellate Court, which affirmed the trial court's judg-
ment of strict foreclosure and determined that the trial court's order
relating to tax and insurance premium reimbursements was not an abuse
of discretion. On the granting of certification, the defendants appealed
to this court. *Held*:

1. The trial court abused its discretion by ordering the defendants to make
monetary payments to the plaintiff outside of a deficiency judgment
pursuant to § 49-14, and, accordingly, the Appellate Court improperly
upheld that order: by pursuing strict foreclosure, the plaintiff elected
to take absolute title to the property, a remedy in rem, and to pursue
any remaining debt through the procurement of a deficiency judgment,
a remedy in personam; moreover, because a deficiency judgment was
the exclusive procedure by which the plaintiff could obtain a remedy
in personam from the defendants in the context of strict foreclosure,
and because the trial court's order requiring the defendants to reimburse
the plaintiff for future taxes and insurance premiums was a remedy in
personam insofar as it operated on the defendants personally with
respect to other property owned by them and settled a dispute by
imposing a personal liability or obligation on them in favor of the plain-
tiff, the trial court's order was improper.

* The listing of justices reflects their seniority status on this court as of the
date of oral argument.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

2. This court declined to consider the defendants' claim that the trial court should have been disqualified due to certain statements that called that court's impartiality into question; the defendants' disqualification claim was not properly before this court, as the defendants failed to raise the issue at trial or on appeal before the Appellate Court, and the issue was beyond the scope of the certified question.

Argued October 21, 2019—officially released August 20, 2020**

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the case was tried to the court, *Hon. Kevin Tierney*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment of strict foreclosure, from which the named defendant et al. appealed to the Appellate Court; thereafter, the court, *Hon. Kevin Tierney*, judge trial referee, granted the plaintiff's motion for reimbursement of property taxes and insurance premiums, and the named defendant et al. filed an amended appeal with the Appel late Court; subsequently, the Appellate Court, *Lavine*, *Mullins* and *Mihalakos*, *Js.*, affirmed the judgment of the trial court, and the named defendant et al., on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed.*

*Ridgely Whitmore Brown*, for the appellants (named defendant et al.).

*Brian D. Rich*, for the appellee (plaintiff).

*Jeffrey Gentes*, *John L. Pottenger, Jr.*, and *Serena Candelaria*, *Adrian Gonzalez*, *Amy Hausmann*, *Natasha Khan* and *Srinath Reddy Kethireddy*, law student interns, filed a brief for the Housing Clinic of the Jerome N. Frank Legal Services Organization as amicus curiae.

** August 20, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

336 Conn. 633 MAY, 2021 635

JPMorgan Chase Bank, National Assn. *v.* Essaghof

*Opinion*

McDONALD, J. In this certified appeal, we must decide whether a trial court may order a mortgagor to reimburse a mortgagee for the mortgagee's ongoing advancements of property taxes and insurance premiums during the pendency of an appeal from a judgment of strict foreclosure. The defendants Roger Essaghof and Katherine Marr-Essaghof[1] appeal from the judgment of the Appellate Court affirming the trial court's order requiring that the defendants reimburse the plaintiff, JPMorgan Chase Bank, National Association, for property tax and insurance premium payments advanced by the plaintiff during the pendency of this appeal. The defendants' principal claim is that the Appellate Court incorrectly concluded that the trial court's order was a valid exercise of its equitable authority. We conclude that the trial court abused its discretion because the relief it ordered is inconsistent with the remedial scheme available to a mortgagee in a strict foreclosure. Accordingly, we reverse the judgment of the Appellate Court insofar as it upheld the trial court's order directing the defendants to reimburse the plaintiff for property taxes and insurance premiums. We affirm the Appellate Court's judgment in all other respects.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In

[1] As noted by the Appellate Court in *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 177 Conn. App. 144, 171 A.3d 494 (2017), "[t]he plaintiff, JPMorgan Chase Bank, National Association, acquired Washington Mutual Bank, F.A., the originator of the note and mortgage from which this foreclosure action arises. Washington Mutual Bank, F.A., also held a junior lien with respect to the mortgage that was foreclosed in this action . . . ." Id., 146 n.1. As a result, JPMorgan Chase Bank, National Association, formerly known as Washington Mutual Bank, F.A., also was named as a defendant in this action. The defendant JPMorgan Chase Bank, National Association, however, was defaulted for failure to appear and is not a party to this appeal. Accordingly, we refer to Roger Essaghof and Katherine Marr-Essaghof, collectively, as the defendants, and individually by name where appropriate.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

May, 2006, the defendants executed an adjustable rate promissory note in favor of Washington Mutual Bank, F.A.; see footnote 1 of this opinion; in the original, principal amount of $1.92 million. *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 177 Conn. App. 144, 146–47, 171 A.3d 494 (2017). The loan was secured by a mortgage deed, executed by both defendants, on residential property located in Weston. See id., 147. Approximately two years later, the defendants executed a loan modification and defaulted on the loan shortly thereafter by failing to make payments. Id., 148–49. In September, 2008, the plaintiff acquired Washington Mutual and its assets, including the defendants' loan. Id., 149.

The plaintiff commenced this foreclosure action in March, 2009. Id. In November, 2015, after a seven day bench trial, the court rendered a judgment of strict foreclosure in favor of the plaintiff. See id., 149–50. The court found that the total debt was more than $3.2 million while the fair market value of the property was $1.65 million and set the law days. The defendants timely appealed to the Appellate Court, claiming that the trial court erred in rejecting two of their special defenses; see id., 146, 151; and the automatic appellate stay went into effect pursuant to Practice Book § 61-11 (a).

In early 2016, with the appeal pending and the defendants still living at the property, the plaintiff moved for the trial court to terminate the appellate stay under Practice Book § 61-11 (d) or, in the alternative, to invoke its equitable authority and order the defendants to reimburse the plaintiff for future property taxes and insurance premiums that the plaintiff would advance during the pendency of the appeal. Id., 150 and n.4. On February 23, 2016, the court denied the motion to terminate the stay but granted the requested equitable relief. Id. The court reasoned that, between March, 2010, and January, 2016, the plaintiff had paid more than $330,000

JPMorgan Chase Bank, National Assn. *v.* Essaghof

in property taxes and insurance premiums to protect both its security interest in the property and the priority of its mortgage loan. The court noted that the tax and insurance payments, however, had always been the defendants' responsibility and would continue to be— regardless of the outcome of the pending foreclosure appeal. It further noted that the defendants' obligation to pay the taxes and insurance premiums was not contested in the foreclosure litigation, and the obligation could neither affect nor be affected by the outcome of the appeal. At a hearing on the plaintiff's motion, the trial court explained: "[I]t's not fair that the [defendants] can live in this house and not pay the real estate taxes that they're obligated to [pay] when they win this appeal. It's not fair that they live in this house and not pay the insurance on the house that they're living in. When they win the appeal, they have to pay it." The court further explained: "It's not fair that he has to have his obligations that are his when he wins the appeal or he loses the appeal be paid by somebody else. Where do we get that as a law? How can I stand for that? How can I allow that to happen?"

The court's order applied prospectively. That is, it did not require the defendants to pay the insurance premiums and real estate taxes that had accrued from the time of default; it only required the defendants to reimburse the plaintiff for real estate taxes that it paid in January, 2016, and, on an ongoing basis, for all future property tax and insurance payments until the end of the litigation. The court established the following payment and reimbursement arrangement: the plaintiff would pay the real estate taxes and insurance premiums and submit proof of payment to the defendants. The defendants would then have thirty days to reimburse the plaintiff. If the defendants did not comply, the plaintiff could seek sanctions against either or both defendants, including, but not limited to, a finding of contempt. At

JPMorgan Chase Bank, National Assn. *v.* Essaghof

the hearing, the court acknowledged that it could not hold the defendants in contempt if they were unable to pay but suggested that, if they did have the ability to pay, the court could jail the defendants as an incentive to do so. The defendants subsequently amended their pending appeal in the Appellate Court to challenge the February 23, 2016 order on the ground that it was an abuse of discretion because it carried the threat of imprisonment for failure to pay a debt, the ''equivalent to the re-creation of [a] debtors' prison.'' (Internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 177 Conn. App. 150, 160.

The Appellate Court rejected each of the defendants' claims related to the special defenses and affirmed the trial court's judgment of strict foreclosure. Id., 146, 151, 163. That court also held that the trial court's order relating to tax and insurance premium reimbursements was not an abuse of discretion. Id., 162. The Appellate Court reasoned that the trial court's payment order was a matter of the court's broad equitable discretion, and it could not ''conceive of any abuse of discretion on the part of the trial court . . . in determining that a balancing of the equities justified ordering the defendants to pay for expenses that they would have been required to pay no matter the outcome of this case.'' (Footnote omitted.) Id.

We thereafter granted the defendants' petition for certification to appeal, limited to the following issue: ''Did the Appellate Court properly affirm the judgment of the trial court ordering the defendants to reimburse the plaintiff for property taxes and homeowners insurance premiums in violation of the provisions of General Statutes § 49-14 pertaining to deficiency proceedings?'' *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 328 Conn. 915, 180 A.3d 962 (2018).

Although we granted the defendants' petition limited to the one issue, on appeal, the defendants raise two claims: (1) the Appellate Court improperly affirmed the

JPMorgan Chase Bank, National Assn. *v.* Essaghof

trial court's order to reimburse the plaintiff for taxes and insurance premiums because, in a strict foreclosure, a trial court may award money damages only in a deficiency judgment pursuant to § 49-14; and (2) this court should vacate the judgment in its entirety and order a new trial before a different judge because certain statements the trial court made at a hearing on February 8, 2016, call into question the trial court's impartiality, requiring its disqualification under rule 2.11 of the Code of Judicial Conduct.[2] We agree with the defendants that the trial court's order constituted an abuse of discretion because it does not fit within the remedial scheme available to a mortgagee in a strict foreclosure. We decline to consider the merits of the defendants' second claim because the defendants did not raise the disqualification issue before the trial court or the Appellate Court, and because it is outside the scope of the certified question. Accordingly, we reverse in part the judgment of the Appellate Court.

I

We first consider whether the trial court's order requiring the defendants to reimburse the plaintiff for tax and insurance premium advancements was a valid exercise of the court's equitable authority. The defendants argue that, although a court generally has broad equitable discretion in a foreclosure proceeding, monetary payments are legal, not equitable, relief and must be awarded only in accordance with the procedure for deficiency judgments set forth in § 49-14. The plaintiff disagrees and contends that the trial court's order was a valid exercise of the court's equitable authority.

This court reviews the exercise of a trial court's equitable powers for an abuse of discretion. See, e.g., *Presidential Village, LLC* v. *Phillips*, 325 Conn. 394, 407, 158 A.3d 772 (2017); see also *MTGLQ Investors, L.P.*

_____

[2] Details of the February 8, 2016 hearing are set forth in part II of this opinion.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

v. *Egziabher*, 134 Conn. App. 621, 624, 39 A.3d 796 (2012) ("[o]ur review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did" (internal quotation marks omitted)). "Although we ordinarily are reluctant to interfere with a trial court's equitable discretion . . . we will reverse where we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . or to prevent abuse or injustice." (Internal quotation marks omitted.) *Presidential Village, LLC* v. *Phillips*, supra, 407.

We begin with well established background principles regarding the foreclosure of a mortgage. "A note and a mortgage given to secure it are separate instruments, executed for different purposes . . . ." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581, 441 A.2d 593 (1981). "Upon a mortgagor's default on an underlying obligation, the mortgagee is entitled to pursue . . . its remedy at law for the amount due on the note, its remedy in equity to foreclose on the mortgage, or both remedies in one consolidated cause of action." *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 673, 94 A.3d 622 (2014). "[T]he extent of the recovery . . . should not in any event exceed the amount of the debt." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Kotkin*, supra, 581–82.

A mortgage foreclosure is a proceeding in rem; *Atlas Garage & Custom Builders, Inc.* v. *Hurley*, 167 Conn. 248, 252, 355 A.2d 286 (1974); its purpose is to extinguish the mortgagor's equity of redemption and vest absolute title to the property in the mortgagee. See *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, supra, 312 Conn. 673. A judgment in rem "creates no personal liability but operates only on the res which is the subject of the litigation . . . ." 50 C.J.S. 792, Judgments § 1385

JPMorgan Chase Bank, National Assn. *v.* Essaghof

(2009); see also *Zellen* v. *Second New Haven Bank*, 454 F. Supp. 1359, 1363 (D. Conn. 1978) ("the generally accepted definition of a proceeding in rem is 'a proceeding to determine the right in specific property, against all the world, equally binding on everyone' "); *Hodge* v. *Hodge*, 178 Conn. 308, 313, 422 A.2d 280 (1979) ("an action in rem is an action brought to enforce or protect a [preexisting] interest in particular property" (internal quotation marks omitted)). An action at law on the note, by contrast, is a proceeding in personam because it "imposes a personal liability or obligation on one person in favor of another" and "does not directly affect the status of the res . . . ." 49 C.J.S. 44, Judgments § 12 (2009); see also *Zellen* v. *Second New Haven Bank*, supra, 1363 ("[t]he object of an in personam action is to obtain a judgment against a person rather than to obtain a judgment determining the status and disposition of property"); Garner's Dictionary of Legal Usage (3d Ed. 2011) p. 461 ("[a]n action is in personam when its purpose is to determine the rights and interests of the parties themselves in the subject matter of the action . . . [and] an action is in rem when the court's judgment determines the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in the property at issue").

A foreclosure is "peculiarly an equitable action, and the court may entertain such questions as are necessary to be determined in order that complete justice may be done." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966). The court's discretion, however, is not unlimited. "The law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided by the legislature. . . . In exercising its equitable discretion . . . the court must comply with mandatory statutory provi-

JPMorgan Chase Bank, National Assn. *v.* Essaghof

sions that limit the remedies available to a foreclosing mortgagee.'' (Citations omitted; footnote omitted.) *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256–57, 708 A.2d 1378 (1998).

''Historically, a foreclosure proceeding was an absolute bar to further action on the mortgage debt. In *M'Ewen* v. *Welles*, 1 Root [Conn.] 202, 203 (1790), the [court] enunciated that '[i]f [the mortgagee] choose[s] to take the land and to make it his own absolutely, whereby the mortgagor is totally divested of his equity of redemption, the debt is thereby paid and discharged: And if it eventually proves insufficient to raise the sum due, it is the mortgagee's own fault, and at his risk.' Starting in 1835, a succession of statutes established a mortgagee's right to a judgment for the deficiency when the value of the property proves inadequate to satisfy the mortgage debt in full.'' *Factor* v. *Fallbrook, Inc.*, 25 Conn. App. 159, 161–62, 593 A.2d 520, cert. denied, 220 Conn. 908, 597 A.2d 332 (1991). The modern versions of these statutes are General Statutes §§ 49-1 and 49-14. We discuss each in turn.

Section 49-1 provides in relevant part that ''[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof . . . .'' Under § 49-1, ''a judgment of strict foreclosure extinguishes all rights of the foreclosing mortgagee on the underlying note, except those enforceable through the use of the deficiency judgment procedure delineated in . . . § 49-14.'' *First Bank* v. *Simpson*, 199 Conn. 368, 370, 507 A.2d 997 (1986). More specifically, with the exception of a deficiency judgment under § 49-14, § 49-1 precludes a mortgagee from ''pursu[ing] personal remedies against the mortgagors with respect to their personal obligations'' on the mortgage debt. (Emphasis omitted.) *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 265.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

Section 49-14 (a) is a limited exception to this bar on further action following a strict foreclosure,[3] and it provides that, "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. . . . At [the deficiency hearing] the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment." A deficiency judgment is a remedy in personam; see W. Cook, "The Powers of Courts of Equity," 15 Colum. L. Rev. 37, 52 (1915); see also *Bank of Stamford* v. *Alaimo*, 31 Conn. App. 1, 5, 622 A.2d 1057 (1993) (plaintiff in foreclosure action "who intends to bring a deficiency judgment authorized by . . . § 49-14 must allege facts sufficient, not only to justify the decree of foreclosure on the mortgage, but to support *a judgment in personam* against the particular defendant or defendants against whom a deficiency judgment will be sought" (emphasis added; footnote omitted)); and "any deficiency judgment sought in connection with the foreclosure arises from the contractual relationship between the parties to the promissory note." *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, supra, 312 Conn. 674. Accordingly, a deficiency judgment, in light of § 49-1, is "the only available means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole." *First Bank* v. *Simpson*, supra, 199 Conn. 371; see 1 D. Caron & G. Milne, Connecticut Foreclosures (10th Ed. 2020) § 10-5:1, pp. 705–706. In other words, a deficiency judgment is the only procedure by which a court may order a mortgagor to pay money to a mortgagee in the context of a strict foreclosure.

---

[3] General Statutes § 49-28 provides the exception to § 49-1 for a deficiency judgment following a foreclosure by sale.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

Although §§ 49-1 and 49-14 are not implicated until the law days have run, the statutes operate within, and must be consistent with, the larger remedial scheme. "It is our adjudicatory responsibility to find the appropriate accommodation between applicable judicial and statutory principles. . . . [C]ourts must . . . [ensure] that the body of the law—both common and statutory—remains coherent and consistent." (Internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 257. To that end, the fact that the statutes do not apply until *after* the law days have run does not mean that a mortgagee seeking a strict foreclosure may subvert the remedial scheme by receiving monetary payments *before* the law days have run. Were we to permit such a practice during the pendency of a mortgagor's appeal, there would be little principled reason that a mortgagee could not also ask a court to order the payment of property insurance premiums or real estate taxes—or even monthly installments of principal and interest—as a condition to the mortgagor's asserting a defense to a foreclosure. We are aware of no statutory or common-law authority that would authorize such a pendente lite order. Unlike in the summary process context, in which the legislature has authorized courts to order use and occupancy payments during the pendency of an eviction action; see General Statutes § 47a-26b; or during the appeal of an eviction action; see General Statutes § 47a-35a; there is no similar statutory framework in the foreclosure context. "Where the legislature has taken action in an area, [this court] generally interpret[s] the legislature's failure to take similar action in a closely related area as indicative of a decision not to do so." *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 255, 869 A.2d 611 (2005).

In sum, once a mortgagee elects to pursue a strict foreclosure against the mortgagor, it is limited to a specific statutory process by which it may seek to be

JPMorgan Chase Bank, National Assn. *v.* Essaghof

made whole. First, the mortgagee receives title to the property that secures the note—a remedy in rem. Then, if the debt exceeds the value of the property, the mortgagee may seek to recover the difference from the mortgagor in a deficiency judgment pursuant to § 49-14— a remedy in personam. A deficiency judgment is the exclusive procedure by which a mortgagee in a strict foreclosure may obtain a remedy in personam from a mortgagor.

We now apply these principles to the facts of this case. The plaintiff filed a one count complaint against the defendants, seeking to foreclose on the property; there was no second count alleging breach of contract relating to the promissory note. By pursuing the foreclosure, the plaintiff elected its remedy in equity: to take absolute title to the property, a remedy in rem, and topursue any remaining debt in the context of a deficiency judgment, the only process through which it could receive a remedy in personam from the defendants. After a bench trial, the court rendered a judgment of strict foreclosure, and the defendants appealed. While the appeal was pending, the trial court ordered the defendants to reimburse the plaintiff for all future tax and insurance premium advancements through the end of the litigation. The question, then, is whether the trial court's order constitutes a remedy in rem or a remedy in personam.

At least two aspects of the trial court's order make clear that it was a remedy in personam. First, unlike a judgment in rem, the order did not "[operate] only on the res . . . ." 50 C.J.S., supra, p. 792. To the contrary, it operated on the defendants personally with respect to *other* property owned by them, by requiring them to pay over money under threat of contempt. Put simply, the order did not involve the question of who was entitled to the property. Thus, it did not operate on the res *at all*, let alone operate *only* on the res.

Second, like a judgment in personam, the payment order settled a dispute by "impos[ing] a personal liability or obligation on [the defendants] in favor of [the plaintiff]." 49 C.J.S., supra, p. 44. The order involved personal liability because it required the defendants to pay money from their personal funds to the plaintiff. Although it is true that the order did not *create* this liability—indeed, the taxes and insurance premiums were the defendants' responsibility independent of the order—the threatened consequence for failure to pay was also personal: the defendants could be held in contempt of court for defying a court order, and the trial court suggested that they could be jailed as an incentive to pay. There is no more personal a liability than the physical confinement of one's body. See W. Cook, supra, 15 Colum. L. Rev. 52 ("To levy on a man's property, sell it, pass title to it to a purchaser, and pay the proceeds to the plaintiff . . . is very obviously to do a fundamentally different thing from ordering the defendant to do an act and putting him in jail for contempt if he does not obey; and the phrases in rem and in personam probably express this as well as any others. . . . [A]s a punishment for not doing something and for the purpose of persuading him to do it, the court deals directly with the physical person of the defendant, as distinguished from dealing with his property.").

Furthermore, as the plaintiff advances the taxes and insurance premiums, the payments become part of the mortgage debt; see General Statutes § 49-2 (a) ("[p]remiums of insurance, taxes and assessments paid by the mortgagee . . . are a part of the debt due the mortgagee or lienor"); *Lewis* v. *Culbertson*, 124 Conn. 333, 336, 199 A. 642 (1938) ("[mortgage debt includes] . . . [p]remiums of insurance, taxes and assessments paid by the mortgagee" (internal quotation marks omitted)); *Desiderio* v. *Iadonisi*, 115 Conn. 652, 654–55, 163 A. 254 (1932) ("[the mortgagee] is entitled to have the security for the debt preserved against loss or diminu-

JPMorgan Chase Bank, National Assn. *v.* Essaghof

tion in value by reason of obligations owed by the mortgagor . . . for taxes and the like . . . and if [the mortgagee] discharges such obligations [itself], [it] may tack them to the mortgage debt");[4] and, as discussed, the mortgagee in a strict foreclosure may recover mortgage debt only in the context of a deficiency judgment. See General Statutes §§ 49-1 and 49-14. Because a deficiency judgment is a remedy in personam, payments that are properly recoverable only as part of a deficiency judgment are most logically also classified as in personam. Accordingly, we conclude that the trial court's order constitutes a remedy in personam, which, because it took place outside the context of a deficiency judgment, was impermissible.

The plaintiff contends that, in *Desiderio* v. *Iadonisi*, supra, 115 Conn. 652, we endorsed the relief that the trial court ordered in the present case. In *Desiderio*, we noted—in dictum—that a mortgagee has a right "to have the value of [its] security preserved until the foreclosure has become absolute or the property is sold . . . [and, if] payment of taxes is necessary to preserve the security or any part of it from being taken to satisfy them, the court may order their payment by the receiver . . . ." Id., 656. Setting aside the fact that we held that it was not error for the trial court to *decline* to order the receiver to pay the taxes; see id., 657; the principle we noted in that case differs from the relief the court ordered in the present case.

There is a difference between ordering *a receiver* to pay taxes from funds that it has collected and ordering *the mortgagor* to reimburse the mortgagee for taxes and insurance premiums, which renders *Desiderio*

---

[4] Section 9 of the mortgage deed executed by the parties in the present case similarly provides in relevant part: "Any amounts disbursed by [l]ender under this Section 9 shall become additional debt of [b]orrower secured by this [s]ecurity [i]nstrument. These amounts shall bear interest at the [n]ote rate from the date of disbursement and shall be payable, with such interest, upon notice from [l]ender to [b]orrower requesting payment."

JPMorgan Chase Bank, National Assn. *v.* Essaghof

inapposite. A receiver acts as an agent or arm of the court. See, e.g., *New Haven Savings Bank* v. *General Finance & Mortgage Co.*, 174 Conn. 268, 270, 386 A.2d 230 (1978). It takes in rent and income generated by the property and uses the money to manage the property. Although the mortgagor *might* ultimately be entitled to funds taken in by the receiver, the money is in the possession of the court, and the court can order it to be distributed "as justice and equity require . . . ." *Desiderio* v. *Iadonisi*, supra, 115 Conn. 655. To be sure, regardless of whether a receiver is involved, it is the responsibility of the mortgagor, not the mortgagee, to pay the taxes and insurance premiums. The salient question is what remedies or mechanisms are available to the mortgagee to ensure that payment is made. In a foreclosure in which a receiver has been collecting income generated by the property, and in which the preservation of the mortgagee's security depends on payment of the taxes, it falls within the equitable authority of the court to order the receiver to pay the taxes from rents it has collected. But, in the circumstances of the present case, the court's equitable authority is limited by the remedial scheme available in a strict foreclosure, which precludes a remedy in personam outside the context of a deficiency judgment.[5]

The plaintiff further contends that, under this court's decision in *Jajer*, § 49-1 does not preclude a mortgagee's "continuing access to equitable foreclosure proceedings" following the foreclosure of a mortgage. *New Mil-*

---

[5] The plaintiff also notes that a couple of trial court cases have ordered similar relief, including *Mun* v. *Doria*, Docket No. CV-04-4001719-S, 2008 WL 2967039 (Conn. Super. July 11, 2008), and *Norwich Savings Society* v. *Caldrello*, Docket No. 512204, 1994 WL 174214 (Conn. Super. April 26, 1994). Neither of these cases is persuasive. In both *Mun* and *Caldrello*, the only authority the courts cite in support of their orders is the broad discretion available to a court, given the equitable nature of a foreclosure. See *Mun* v. *Doria*, supra, *2; *Norwich Savings Society* v. *Caldrello*, supra, *4. Neither court considered the statutory limitations on equitable discretion that we discuss in this opinion.

*ford Savings Bank* v. *Jajer*, supra, 244 Conn. 267. Specifically, the plaintiff argues that the court's order is purely a matter of equity arising out of the mortgage, and, as such, it is the kind of equitable order that *Jajer* permits. We disagree.

In *Jajer*, we explained that, following the foreclosure of a mortgage, § 49-1 "expressly bar[s] an in personam remedy . . . ." Id., 266. That is, the statute precludes the mortgagee from "pursu[ing] *personal* remedies against the mortgagors with respect to their *personal* obligations" on the mortgage debt. (Emphasis in original.) Id., 265. It does not, however, preclude a mortgagee from pursuing further remedies in rem. See id., 266–67. Properly understood, *Jajer* permits a mortgagee's "continuing access to equitable foreclosure proceedings"; id., 267; but limits the remedies available in those proceedings—remedies in rem are permissible, whereas remedies in personam are not. *Jajer* itself illustrates the difference. In that case, the mortgagee foreclosed a mortgage in which the property comprised three parcels of land. Id., 253. Due to a scrivener's error, the foreclosure complaint referred to only two of the three parcels, and the mortgagee did not discover its mistake until after a judgment of strict foreclosure was rendered, the law days passed, and it acquired title to parcels one and two. See id. Because the mortgage had already been foreclosed, the mortgagee could no longer recover personally—i.e., seek a remedy in personam—from the mortgagors. See id., 267 n.25. But, because § 49-1 does not prohibit a mortgagee from seeking a remedy in rem in a further equitable foreclosure proceeding, the mortgagee could pursue a foreclosure to obtain title to parcel three. See id., 266–67.

In the present case, although the trial court issued its order as a matter of its equitable discretion, the relief it ordered was, as we have explained in this opinion,

undoubtedly in personam. Thus, the trial court's order was improper.

We conclude that, when the defendants defaulted on their payment obligations, and the plaintiff elected strict foreclosure as its remedy, the plaintiff chose a remedial scheme that prescribes a specific and exclusive process by which it could be made whole. At the conclusion of this process, assuming the defendants do not redeem, their equity of redemption will be extinguished by the passing of the law days, and absolute title to the property will vest in the plaintiff. If the debt exceeds the value of the property, the plaintiff may then pursue the difference from the defendants in a deficiency proceeding pursuant to § 49-14. The deficiency judgment is the only procedure available to the plaintiff to recover its mortgage debt, including payments advanced to pay real estate taxes and property insurance, in excess of the value of the property. The trial court's order directing the defendants to make monetary payments to the plaintiff outside of a deficiency judgment was an abuse of discretion.

II

The defendants next argue, in a footnote spanning the last two pages of their brief, that the trial court violated rule 2.11 of the Code of Judicial Conduct by making certain statements that call into question the court's impartiality. Specifically, the defendants contend that the trial court's repeated references to "bologna sandwiches''—evidently, a reference to being jailed for contempt—call for this court to vacate the judgment and remand the case for a new trial before a different judge. The plaintiff argues that the defendants have abandoned any claim that the trial court should have been disqualified because the defendants did not raise the disqualification issue before the Appellate Court, and it is outside the scope of the certified question.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

At a hearing on February 8, 2016, the trial court discussed, among other things, consequences that could arise if the defendants were to defy a court order to reimburse the plaintiff for tax and insurance premiums. After acknowledging that the court could not punish the defendants if they could not afford the payments, the court went on to discuss what could happen if the defendants declined to make the payments despite being able to do so. In that context, the following colloquy took place:

"The Court: . . . [I]f he doesn't have money . . . then there's no punishment that I can enter.

"[The Plaintiff's Counsel]: Right.

"The Court: But the other punishment would be to tell them about bologna sandwiches. You know what—you know what the reference to bologna sandwiches [is]?

"[The Plaintiff's Counsel]: I don't, Your Honor.

\* \* \*

"The Court: Well, Mr. Brown, tell him what [the reference] to bologna sandwich[es] is.

"[The Defendants' Counsel]: That's the only meat you get in jail.

"The Court: That's the only food that you get downstairs.

"[The Plaintiff's Counsel]: Oh.

"The Court: When you go downstairs, that's what you get, you get bologna sandwiches.

\* \* \*

"The Court: You don't get a choice of mayonnaise or mustard, either. You just get the bologna with the sandwich. That's it.

JPMorgan Chase Bank, National Assn. *v.* Essaghof

"[The Plaintiff's Counsel]: Okay.

"The Court: You get something to drink. It's called bologna sandwiches. And we'll give him bologna sandwiches, and then he sits down there . . . . I'm not going to put [Katherine Marr-Essaghof] in jail; I'll put [Roger Essaghof] in jail first. Okay. And then he sits down there, and she's upstairs, so she can make the telephone calls to get the money.

"[The Plaintiff's Counsel]: Okay.

"The Court: Or to get the proof that he doesn't have any money, and then, after being down there at 11 o'clock in the morning, and he has his bologna sandwich, [at] 3:30 in the afternoon, we come back, and we have a hearing. If it's a Friday afternoon hearing, it's going to be a little dicey because the marshal is going to be knocking at the door, saying, van's leaving, we're going up to North Avenue, we've got to—you've got to make a—let's go, make a decision. So, I'll make a decision.

"[The Plaintiff's Counsel]: Okay.

"The Court: You get a hot meal for that night though.

"[The Plaintiff's Counsel]: No, bologna.

"The Court: No, you sleep in a gym . . . on North Avenue."

The defendants concede that the disqualification issue was not raised at trial or presented to the Appellate Court. The issue is also beyond the scope of the certified question. Accordingly, although we do not condone this colloquy, we decline to consider the merits of the defendants' claim.[6] See, e.g., *Grimm* v. *Grimm*,

─────────────────────

[6] The defendants also suggest that the trial court's references to "bologna sandwiches" were improper "given the fact that [Roger Essaghof] is a Persian Jew." We see nothing in the record to support the suggestion that the references to "bologna sandwiches" were motivated by Roger Essaghof's identity as a Persian Jew. At oral arguments before this court, the defendants' counsel was asked how he knew what the trial court meant in referring to

JPMorgan Chase Bank, National Assn. *v.* Essaghof

276 Conn. 377, 393, 886 A.2d 391 (2005) ("a claim that has been abandoned during the initial appeal to the Appellate Court cannot subsequently be resurrected by the taking of a certified appeal to this court"), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); *State* v. *Robert H.*, 273 Conn. 56, 86, 866 A.2d 1255 (2005) (declining to consider claim because it was not preserved for appeal and because it "exceed[ed] the scope of the certified question"); *Gillis* v. *Gillis*, 214 Conn. 336, 343, 572 A.2d 323 (1990) ("[i]t is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial").

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to reverse the trial court's order directing the defendants to reimburse the plaintiff for property taxes and homeowners insurance premiums and to remand the case to that court for the purpose of setting a new law day; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

---

"bologna sandwiches." He replied: "It's commonly known to be—bologna sandwiches means you're going to a—either civil or criminal contempt. In fact . . . back when I was a good deal younger, I had a civil contempt where I found out what a . . . bologna sandwich was. So, yes, it's a reference, and it's understood . . . ." Given that (1) the defendants acknowledge that "bologna sandwiches" is a known, long-standing reference to being held in contempt, (2) the trial court made the references while discussing contempt as the consequence for noncompliance with a court order, and (3) there is otherwise no indication in the record that the trial court was biased against, or even aware of, Roger Essaghof's identity as a Persian Jew, we see no basis from which to infer that the trial court's comments were related in any way to his identity.